433 So.2d 512 (1983)
GULF INSURANCE COMPANY, Petitioner,
v.
DOLAN, FERTIG AND CURTIS, Respondent.
No. 62786.
Supreme Court of Florida.
May 26, 1983.
*513 William D. Ricker, Jr. and Michael T. Burke of Fleming, O'Bryan & Fleming, Fort Lauderdale, for petitioner.
M. Lee Gay, Jr. of McClure & Gay, Fort Lauderdale, for respondent.
EHRLICH, Justice.
This is a case of first impression in Florida. The issue is whether the Court can engraft upon an unambiguous claims-made insurance policy a reasonable additional period of time after the policy period expires for reporting claims that arise late in the contract term.
Respondent (Dolan) is a law firm. It contracted with petitioner (Gulf) for a claims-made insurance policy for the period November 20, 1978 to November 20, 1979. Gulf's policy with Dolan required Gulf to pay all sums on behalf of the insured that the insured should become legally obligated to pay as damages for any claim arising out of professional legal services first made against the insured during the policy period. The policy required that the claim arise for services performed during the policy period; that the claim be known to or made against the insured during said period; and that the insured notify the insurer thereof during said period.
Dolan did not renew the Gulf policy but instead contracted with Lawyers Professional Liability Insurance Company (LPLIC) for a claims-made policy effective for the period November 20, 1979 to November 20, 1980. That policy contained a retroactive provision extending back to 1977, except for claims arising out of any occurrence prior to the effective date of the policy if the insured knew of it prior to the policy period.
On November 19, 1979, the Gulf policy's final day, Dolan received a letter from a client advising it that it no longer represented the client, suggesting that Dolan was grossly negligent in its professional performance, and requesting that Dolan place its malpractice carrier on notice.
Dolan notified LPLIC on or about December 6, 1979 of the existence of this claim. LPLIC informed Dolan on January 16, 1980 that the claim would not be covered because the claim had been known to *514 Dolan before the LPLIC policy was issued. Dolan then contacted Gulf in writing on February 12, 1980 concerning the malpractice claim. Gulf denied coverage, stating it was not notified during the policy period as expressly required in the contract.
Meanwhile, the aggrieved client sued Dolan and received a judgment in excess of $50,000. Dolan then commenced a suit for declaratory relief seeking a determination of whether Gulf or LPLIC or both were liable for the damages award. LPLIC's motion for summary judgment was denied; Gulf's was granted. Dolan appealed the granting of Gulf's motion for summary judgment to the district court. That court, in Dolan, Fertig & Curtis v. Gulf Insurance Co., 419 So.2d 1108 (Fla. 4th DCA 1982), reversed Gulf's summary judgment. It held that the contract was not ambiguous and that claims-made policies were not against public policy. However, "in order to make the contract fair," 419 So.2d at 1110, the district court held that there should be a reasonable time after the policy period expires for reporting claims that are discovered late in the policy period, even though that time extends beyond the termination of the policy. On Petition for Rehearing, the district court certified the following question to us:
As a matter of policy may the court require that "claims made" professional liability policies should (sic) be subjected to a reasonable additional period beyond the termination date of the policy for reporting claims that arise late in the contract term?
419 So.2d at 1111. We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution. We answer the certified question in the negative and quash the opinion of the district court.
The liability insurance policy at issue in this case is referred to as a claims-made policy (sometimes called a discovery policy) as distinct from an occurrence policy. An occurrence policy is a policy in which the coverage is effective if the negligent act or omission occurs within the policy period, regardless of the date of discovery or the date the claim is made or asserted. Samuel N. Zarpas, Inc. v. Morrow, 215 F. Supp. 887 (D.C.N.J. 1963); Bill Binko Chrysler-Plymouth, Inc. v. Compass Insurance Co., 385 So.2d 692 (Fla. 4th DCA 1980); Ranger Insurance Co. v. United States Fire Insurance Co., 350 So.2d 570 (Fla. 3d DCA 1977). See also 7A Appleman, Insurance Law and Practice 313 (Berdal ed. 1979). Initially, all professional liability policies were occurrence policies but because of numerous difficulties with this type of coverage, claims-made policies were initiated and the present trend is toward the latter type. Kroll, The "Claims Made" Dilemma in Professional Liability Insurance, 22 U.C.L.A.L.Rev. 925, 926 (1975). A claims-made policy is a policy "wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term." 7A Appleman at 312. See also Bill Binko Chrysler-Plymouth; Ranger Insurance Co. The essence, then, of a claims-made policy is notice to the carrier within the policy period.
Respondent has argued to this Court that we should strike down all claims-made liability insurance policies as being inequitable agreements and thus in violation of public policy. This we decline to do. Consistent with the views of numerous of our sister courts, we believe that claims-made policies are not "patently offensive or inimical to the public welfare ... [nor do they] have a clear capacity to support or encourage conduct which is deleterious, anti-social or unlawful." Rotwein v. General Accident Group, 103 N.J. Super. 406, 416, 247 A.2d 370, 376 (1968). See also James J. Brogger & Associates, Inc. v. American Motorists Insurance Co., 42 Colo. App. 464, 595 P.2d 1063 (1979); Graman v. Continental Casualty Co., 87 Ill. App.3d 896, 42 Ill.Dec. 772, 409 N.E.2d 387 (1980); Livingston Parish School Board v. Fireman's Fund American Insurance Co., 282 So.2d 478 (La. 1973); Breaux v. St. Paul Fire & Marine Insurance Co., 326 So.2d 891 (La. App. 1976); Gereboff v. Home Indemnity Co., 119 R.I. 814, 383 A.2d 1024 (1978).

*515 Courts ... should be guided by the rule of extreme caution when called upon to declare transactions void as contrary to public policy and should refuse to strike down contracts involving private relationships on this ground, unless it be made clearly to appear that there has been some great prejudice to the dominant public interest sufficient to overthrow the fundamental public policy of the right to freedom of contract between parties sui juris.
Bituminous Casualty Corp. v. Williams, 154 Fla. 191, 197, 17 So.2d 98, 101 (1944) (citations omitted). The great prejudice to the dominant public interest has not been clearly shown; we hold, therefore, that claims-made liability contracts, in general, are not against our public policy.
The district court, in the decision below, certified its question of great public importance on the basis of a contract having "no express provision fixing a reasonable time after the policy period expires for reporting claims that are discovered late in the policy period..." 419 So.2d at 1111 (emphasis supplied). We believe that the district court at this juncture has misapplied the concept of a "reasonable time" as it relates to a claims-made policy. Both claims-made and occurrence policies generally have provisions written into the contract that require, as a condition of the policy, that the insured give notice of the claim to the insurance carrier "immediately," "promptly," "as soon as practicable," or "within a reasonable time." See American Fire & Casualty Co. v. Collura, 163 So.2d 784 (Fla. 2d DCA), cert. denied, 171 So.2d 389 (Fla. 1964). This is bottomed on the premise of prejudice to the insurer who, because of a client's delayed notice to it, has, for example, lost the opportunity of making a timely investigation, forming an estimate of its rights and liabilities, or preventing fraud upon it. 7 Am.Jur.2d Automobile Insurance § 369 (1980).
Notice within an occurrence policy is not the critical and distinguishing feature of that policy type. Occurrence policies are built around an insurer who is liable for the insured's malpractice, no matter when discovered, so long as the malpractice occurred within the time confines of the policy period. Coverage depends on when the negligent act or omission occurred and not when the claim was asserted. The occurrence insurer, then, is faced with a "tail" that extends beyond the policy period itself. This "tail" is the lapse of time between the date of the error (within the policy period) and the time when a claim is made against the insured. The giving of notice is only a condition of the policy, and in no manner is it an extension of coverage itself. It does not matter when the insurer is notified of the claim by the insured, so long as the notification is within a reasonable time and so long as the negligent act or omission occurred within the policy period itself.
Claims-made policies, likewise, require that notification to the insurer be within a reasonable time. Critically, however, claims-made policies require that that notice be given during the policy period itself. When an insured becomes aware of any event that could result in liability, then it must give notice to the insurer, and that notice must be given "within a reasonable time" or "as soon as practicable"  at all times, however, during the policy period.
With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period, as the district court proposes, negates the inherent difference between the two contract types. Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an extension of coverage to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites *516 the contract between the two parties. This we cannot and will not do.[1]
As one commentator has noted:
An underwriter who is secure in the fact that claims will not arise under the subject policy ... after its termination or expiration can underwrite a risk and compute premiums with greater certainty. The insurer can establish his reserves without having to consider the possibilities of inflation beyond the policy period, upward-spiralling jury awards, or later changes in the definition and application of negligence.
Kroll at 928 (footnote omitted). This theoretically results in lower premiums for an insured since there is no open-ended "tail" after the expiration date of the policy. In fact, there can be no "tail" unless, of course, an extended reporting period is written into the claims-made policy itself. Some claims-made policies do provide that claims made against the insured during the policy period may be reported to the insurer during a specified period after the end of the policy period. See James & Hackworth v. Continental Casualty Co., 522 F. Supp. 785 (N.D. Ala. 1980) (60 days specified in the policy); Graman v. Continental Casualty Co. (60 days specified in the policy); Troy & Stalder Co. v. Continental Casualty Co., 206 Neb. 28, 290 N.W.2d 809 (1980) (60 days specified in the policy); Gereboff v. Home Indemnity Co. (one year specified in the policy). The liability policy in this case did not so provide. However, it contained a provision[2] which gave the insured, in consideration of an additional premium, the right, which need be exercised by written notice not later than 30 days after the termination date of the policy, to have issued an endorsement providing an extended discovery period within which claims otherwise covered by the policy may be reported to the insurer after the end of the policy period. This extended discovery endorsement would thus have permitted Dolan to report the claim in question to Gulf at a point in time after the termination date of the policy period. Dolan, however, declined to avail itself of this quasi-"tail" provision.[3] "[T]he insured received what [it] paid for by the present policy, with premiums presumably reduced to reflect the limited coverage." Livingston Parish School Board, 282 So.2d at 483. Dolan cannot now be heard to complain.
The opinion of the district court which reversed Gulf's summary judgment is hereby quashed, and the cause is remanded for further proceedings not inconsistent herewith.
It is so ordered.
*517 ALDERMAN, C.J., and ADKINS, BOYD, OVERTON, McDONALD and SHAW, JJ., concur.
NOTES
[1] The district court posed the following factual situation:

A time comes at the end of the policy period when it may well be impossible for the insured to notify the company of a claim. The extreme case would involve the receipt of a claim by the insured minutes before the midnight expiration of the term on the last day thereof.
419 So.2d at 1110 (emphasis supplied). Without deciding the issue at this time, we believe that under the circumstances a "reasonable time" would not be germane to a claims-made contract; instead, if an impossibility prevented notice being given to an insurer at the very end of the policy period, it may well be that an insured would be relieved of giving notice during the period of such impossibility. In most instances, this would be measurably shorter than a "reasonable" period of time. That issue is not before us, however, and we decline to fully address it.
[2] That section reads:

In the event of termination of insurance either by non-renewal or cancellation of this policy, or termination of an extended discovery period, the Named Insured shall have the right upon payment of an additional premium (to be computed in accordance with the Company's rules, rates, rating plans and premiums applicable on the effective date of the endorsement) to have issued an endorsement(s) providing additional EXTENDED DISCOVERY PERIOD(S) in which claims otherwise covered by this policy may be reported. The limits of liability at the time this insurance is terminated shall be the limits applicable to each extended discovery period. Such right hereunder must, however, be exercised by the Named Insured by written notice not later than thirty (30) days after such termination date.
[3] This right was available to Dolan at the time it notified LPLIC of the claim in question on December 6, 1979 and for a period of two weeks thereafter.