UNITED NATIONAL INSURANCE COMPANY, Plaintiff,

v.

Michael JACOBS, d/b/a MJ's Pegasus Lounge; Tammy D. Campbell; Karen A. Perry & Stephen J. Perry, Defendants.

No. 88–1103–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Feb. 7, 1990.

W. David Rogers Jr., Rogers & Dowling, P.A., James A. Coleman, Orlando, Fla., for plaintiffs.

James R. Provencher, Martinez, Dalton & Provencher, P.A., Orlando, Fla., for Karen and Stephen Perry.

John R. Overchuck, Overchuck, Langa & Crews, Orlando, Fla., for MJ's Pegasus Lounge.

## ORDER

G. KENDALL SHARP, District Judge.

This case was tried without a jury on December 14, 1989, and involved a claims-made liquor liability insurance policy that United National Insurance Company (UNIC) issued to Michael Jacobs, d/b/a MJ's Pegasus Lounge (Jacobs). UNIC brought this action to determine whether the subject insurance policy provided coverage for Jacobs in the Florida state-court lawsuit that Karen A. Perry and Stephen J. Perry brought against him and Tammy D. Campbell. In accordance with Federal Rule of Civil Procedure 52(a), this court enters its order based on the testimony, evidence, and exhibits presented during this non-jury trial.

## I. Findings of Fact

The event that caused this lawsuit was the complaint Karen A. Perry and Stephen J. Perry filed in October 1988 in a Florida circuit court against Tammy D. Campbell and Michael Jacobs, d/b/a MJ's Pegasus Lounge. In their complaint, the Perrys alleged that on April 30, 1988, Campbell negligently drove her automobile and caused a collision with Karen Perry. They claimed Campbell was voluntarily intoxicated and was driving with a blood alcohol level of .20. According to the Perrys, Jacobs and his employees at MJ's Pegasus Lounge knowingly and intentionally served Campbell alcoholic beverages, which led to her intoxication. Moreover, the Perrys maintained that Jacobs and his employees knew Campbell was an alcoholic. The Perrys also alleged that Karen Perry suffered permanent or continuing losses from the accident.

Beginning in August 1987, Jacobs was insured under a "Claims Made Liquor Liability Policy" issued by UNIC. Jacobs acquired the policy from the J.E. Tumblin Agency, Inc. Tumblin ordered the policy from Symons Underwriters, which is UNIC's resident surplus lines agent in Florida.[1] Once Tumblin received the policy from Symons, the policy was reviewed, the necessary billing forms were completed, and a copy of the policy was mailed to Jacobs.

Coverage went into effect on August 27, 1987, and lasted until August 27, 1988, at 12:01 a.m. eastern-standard time. On July 19, 1988, Lynda Congleton, a customer service representative at Tumblin, wrote Jacobs to inform him that his policy needed to be renewed.[2] Jacobs did not answer the letter. Congleton then called the Pegasus Lounge on August 16, 1988, to tell Jacobs that he had to renew his coverage or it would expire on August 27. Jacobs told her that he would return her call after he

---

1. UNIC is not authorized to transact insurance in Florida except through "qualified, licensed, and supervised surplus lines agents resident in this state...." Fla.Stat. § 626.913(2) (1989).

2. Tumblin had to contact Jacobs almost every month during the UNIC policy term, because he was generally late in making his monthly premium payments.

spoke with his bookkeeper. Jacobs never called Congleton back, and on August 17, she sent him another letter notifying him that his down payment for renewal was required by August 25. Jacobs never responded to the letter. On August 25, she again called the Pegasus Lounge. Both Jacobs and his bookkeeper were unavailable, and she left a message. Neither returned Congleton's call, so she sent Jacobs a certified letter on August 26 to inform him that his policy would be cancelled at 12:01 a.m., August 27. After the policy was cancelled, its sixty-day discovery period went into effect. The discovery period gave Jacobs until October 26, 1988, at 12:01 a.m. eastern-standard time, to report any claim that resulted from an injury occurring between August 27, 1987, and August 27, 1988.

On September 8, 1988, Congleton spoke with Jacobs over the telephone about getting new liquor liability insurance. Because of the gap in Jacobs's coverage, his landlord had insisted that he obtain insurance coverage immediately. Owing to the time pressure imposed by Jacobs, Congleton could not get him retroactive coverage in just one day. Jacobs had to settle for a claims-made liquor liability policy that had an effective date and a retroactive date of September 8, 1988. Universal Security Insurance Company (Universal) issued the policy, which offered Jacobs the same type of coverage he had received from UNIC.

At 10:00 a.m. on October 25, 1988, Jacobs was served with a summons and complaint for the state-court action involving himself and the Perrys. Later that afternoon, a friend of Jacobs telephoned Tumblin and spoke to Evelyn Hansen. The caller informed her that Jacobs had an insurance claim, but he did not state the nature of the claim nor to which of Jacobs's three insurance policies the claim applied.[3] Hansen told the caller to bring her the papers immediately, but he wanted to wait until he obtained the police report.

The next day, October 26, at approximately 3:30 p.m., Jacobs brought Tumblin the summons, complaint, and police report. Shortly thereafter, Tumblin sent notice of the claim to Program Underwriters by overnight express. Program Underwriters received the notice on October 27 and sent it to Symons Underwriters via a facsimile machine that day. Symons then sent a facsimile of the notice to UNIC, where it was also received on October 27.

After reviewing the claim, UNIC decided to defend Jacobs in the state-court action but reserved the right to contest its liability in the matter. UNIC hired Jennifer Moorehead to represent Jacobs. During the course of her representation, Moorehead filed a motion for summary judgment on Jacobs's behalf. In support of the motion, Moorehead submitted affidavits attesting that neither Jacobs nor his employees knew that Campbell was an alcoholic. In Moorehead's opinion, the motion had a good chance of being granted.

Despite Jennifer Moorehead's defense, Jacobs consulted another attorney, John R. Overchuck, about the state-court lawsuit. Although Overchuck did not examine the affidavits Moorehead used in support of the motion for summary judgment, Overchuck told Jacobs he thought the motion would be denied. He advised Jacobs to protect his personal assets and settle the case with the Perrys. On June 26, 1989, Jacobs entered a "Compromise, Settlement Agreement and Assignment of Causes of Action" with the Perrys. Pursuant to the agreement, Jacobs settled the personal injury suit for the UNIC policy limit of $100,-000.00 and assigned his rights and causes of action against UNIC and Tumblin to the Perrys. Jacobs entered the settlement agreement without the consent of UNIC and while still being defended by Moorehead.

To determine its rights in the state-court action, UNIC filed a complaint for declaratory relief with this court. UNIC contended that it was not required to provide Jacobs with coverage for three reasons: first, Jacobs did not give UNIC written notice of the claim until after the sixty-day discovery

---

**3.** Tumblin insured Jacobs under the UNIC policy, the Universal policy, and a business policy.

period had passed; second, Jacobs terminated the UNIC discovery period on September 8, 1988, when he received similar coverage from Universal; and, third, Jacobs entered the settlement agreement without UNIC's consent and, therefore, at his own risk.

In response, Jacobs and the Perrys argued that UNIC must provide Jacobs with coverage. They claimed UNIC was prohibited from denying Jacobs coverage because UNIC never provided him with a copy of the policy. They also contended that Jacobs gave Tumblin notice of the claim on October 25, 1988, the day before the end of the discovery period. In addition, they maintained that Jacobs had the authority to settle the case with the Perrys.

## II. Conclusions of Law

Because jurisdiction in this action is based on diversity of citizenship, Florida law controls the outcome of UNIC's request for declaratory relief.[4] *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Samuels v. Doctors Hosp. Inc.,* 588 F.2d 485, 488 (5th Cir.1979). The subject insurance policy is known as a claims-made or discovery policy. Under this type of policy, coverage goes into effect only if the negligent act or omission is discovered and brought to the insurer's attention within the policy term. *Gulf Ins. Co. v. Dolan, Fertig & Curtis,* 433 So.2d 512, 514 (Fla. 1983). An "occurrence policy," in contrast, goes into effect "if the negligent act or omission occurs within the policy period, regardless of the date of discovery or the date the claim is made or asserted." *Id.*

■ Because an insurance policy is a contract, a court construes it in accordance with the rules of interpretation and construction applicable to ordinary contracts. *See Equitable Life Assurance Soc'y v. Pinon,* 344 So.2d 880, 882 (Fla.Dist.Ct.App.) (per curiam), *cert. denied,* 354 So.2d 984 (Fla.1977); *Martin v. Nationwide Mut. Fire Ins. Co.,* 235 So.2d 14, 16 (Fla.Dist.Ct. App.1970). Parties to an insurance contract may fix terms as they desire, and a court will not rewrite those terms unless they are ambiguous. *See Gulf Ins. Corp. v. Continental Casualty Co.,* 464 So.2d 207, 209 (Fla.Dist.Ct.App.1985); *Equitable Life Assurance Soc'y,* 344 So.2d at 882. Because this court finds the language in the UNIC policy unambiguous, the language will be given its fair and natural meaning. *See Rigel v. National Casualty Co.,* 76 So.2d 285, 286 (Fla.Div.B 1954); *Ranger Ins. Co. v. Harrell,* 286 So.2d 261, 262 (Fla.Dist.Ct.App.1973).

This case raises three issues: whether Jacobs properly notified UNIC within the discovery period of the insurance policy, whether the Universal policy terminated UNIC's coverage of Jacobs, and whether Jacobs was authorized to enter the settlement agreement with the Perrys.

### A. Whether Jacobs Properly Notified UNIC

■ The sixty-day discovery period became effective on August 27, 1988, after Jacobs failed to renew the UNIC policy, and it gave Jacobs until October 26, 1988, at 12:01 a.m. eastern-standard time, to report any claim that arose from an injury occurring during the policy term. When Jacobs was served the summons and complaint for the state-court action on October 25, 1988, at 10:00 a.m., he was within the discovery period of the UNIC policy. According to the language of the policy, Jacobs had to give notice of a claim "in writing to the Company" during the discovery period. Policy at 5, para. 12(a). The policy defined "the Company" to be UNIC in Philadelphia, Pennsylvania. *Id.* at 2, § VI(c). UNIC received written notice of the claim on October 27, 1988, one day after the discovery period had expired. Because Jacobs did not give UNIC written notice before 12:01 a.m., October 26, he did not satisfy the terms of the policy. *See Gulf Ins. Co.,* 433 So.2d at 515 ("Claims-made or discovery policies are essentially *reporting* policies ...; if the claim is not

---

**4.** UNIC is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania; it is considered a citizen of Pennsylvania for jurisdictional purposes. All defendants are residents of Volusia County, Florida.

reported during the policy period, no liability attaches") (emphasis in the original).

Jacobs and the Perrys contended, however, that the policy allowed Jacobs to give written notice of a claim to either UNIC "or any of its authorized representatives...." Policy at 4, para. 4(a). They argued that Jacobs gave Tumblin verbal notice of the claim on October 25, the day before the expiration of the discovery period, and that he also gave Tumblin written notice on October 26. Although the policy does allow written notice to be given to UNIC or any of its authorized representatives, that provision applies to claims made during the term of the policy, which for Jacobs began on August 27, 1987, and ended on August 27, 1988. Furthermore, Symons Underwriters, not Tumblin, is UNIC's authorized representative in Florida, and it did not receive written notice of the claim until October 27.

Yet, assuming the clause applied to the discovery period and assuming Tumblin was UNIC's authorized representative, Jacobs still failed to fulfill the requirements of the policy. Jacobs did not give written notice to Tumblin until after the expiration of the discovery period. He gave Tumblin written notice of the claim in the late afternoon of October 26, which was several hours after the discovery period expired at 12:01 a.m., October 26. In addition, the verbal notice Jacobs gave Tumblin on October 25 was insufficient: it was contrary to the terms of the policy, it did not state the claim, and it did not indicate to which of Jacobs's three policies with Tumblin it affected. *See* Policy at 4, para. 4(a).

■ Jacobs and the Perrys argued further that Jacobs should not be held to the requirements in the policy because he never received a copy of the policy. At trial, Tumblin employees explained Tumblin's general procedure for mailing policies to clients after Tumblin received them from a broker. Nothing suggested that Tumblin failed to follow its general practice in Jacobs's case, and Jacobs did not offer sufficient evidence to dispute the employees' testimony. Still, even if Jacobs never received a copy of the policy, under the law of Florida, when a policy is delivered to an agent, that constitutes delivery to the insured. *Reliance Ins. Co. v. D'Amico*, 528 So.2d 533, 534 (Fla.Dist.Ct.App.1988). Moreover, Jacobs "had a duty to learn and know the contents of the policy before he signed it." *Id.* at 535. Because Jacobs has not alleged that Tumblin either prohibited him from reading the policy or induced him to sign the policy without reading it, Jacobs is bound by the terms of the policy despite his claim that he never received a copy. *Id.*

### B. *Whether UNIC's Coverage of Jacobs was Terminated*

■ Notwithstanding the lack of proper notice, UNIC was no longer the insurer of Jacobs when he received the summons and complaint. Under the policy, the discovery clause became "inoperative in its entirety as of the effective date of any other policy issued by any insurer, including [UNIC], providing the same or similar coverage." Policy at 5, para. 12(a). Jacobs violated this clause and, thereby, forfeited coverage from UNIC, when he obtained a claims-made liquor liability insurance policy from Universal on September 8, 1988. Jacobs secured the Universal policy to replace the lapsed UNIC policy. Universal provided Jacobs with the same or similar coverage. Thus, the UNIC discovery period ended on September 8, over one month before Jacobs was served the summons and complaint in the state-court action.

Although Jacobs received the same type of coverage from Universal, it was not retroactive; the policy's effective date of September 8, 1988, was the start of the liability coverage. Consequently, Universal did not cover the injury to Karen Perry that occurred on April 30, 1988. Once the Universal policy went into effect, the UNIC coverage was terminated. Jacobs, therefore, was without insurance with respect to the Perrys' lawsuit.

Jacobs could have received retroactive insurance to cover the Perrys' state-court

lawsuit. He failed to do so owing to his own delinquency, not because of any fault of Tumblin or UNIC. Tumblin informed Jacobs well in advance of the August 27, 1988, expiration date of the UNIC policy. The first letter Tumblin sent Jacobs about the matter was dated July 19, 1988. Besides that communication, Tumblin called Jacobs twice and wrote to him twice about renewing the policy. Because Jacobs did not extend the UNIC policy, coverage lapsed on August 27, 1988, at 12:01 a.m. eastern-standard time. At that time, the discovery period went into effect, but it did not extend liability coverage per se. It only gave Jacobs sixty additional days to contact UNIC about a claim that resulted from an injury occurring between August 27, 1987, and August 27, 1988. As a result, Jacobs was without liquor liability coverage from August 27, 1988, until September 8, 1988. His landlord's insistence prompted Jacobs to get coverage on September 8. According to the Tumblin agent who worked with Jacobs on September 8, she could have gotten him retroactive coverage if he had given her more time. But, because he needed liquor liability coverage that day, she was only able to obtain the Universal policy.

## C. Whether Jacobs had Control of the Litigation

■ Even though UNIC questioned whether Jacobs was an insured at the time it received notice of the claim, UNIC provided Jacobs with a defense in the state-court action. UNIC conditioned the defense by reserving the right to contest its liability under the policy at a later date. Because Jacobs accepted the defense, UNIC gained exclusive control of the lawsuit up until the point when Jacobs elected to handle the litigation himself. Pursuant to the policy, "[t]he insured shall cooperate with [UNIC in the lawsuit and] ... shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense in connection with any occurrence, incident, claim or suit." Policy at 4, para. 4(b). By entering the settlement agreement with the Perrys without either rejecting the UNIC defense or obtaining UNIC's consent, Jacobs breached the terms of the policy. As such, UNIC is not responsible for satisfying the agreement.

Jacobs and the Perrys argued that Jacobs had the authority to enter the settlement agreement based on the holding in Taylor v. Safeco Insurance Co., 361 So.2d 743 (Fla.Dist.Ct.App.1978). Taylor involved an automobile accident in which the driver of a borrowed car caused the death of his passenger. The passenger's widow sued the driver for her husband's wrongful death, and she joined the car owner's insurance company in the action. The insurance company provided the driver with a defense under a reservation of rights and filed a motion for summary judgment to determine whether coverage existed for the driver. The court granted the motion, and the insurance company withdrew its defense. The widow appealed the court's ruling, and the insurance company again offered to defend the driver under a reservation of rights. The driver rejected the offer and settled the case with the widow by himself. Id. at 744.

The Taylor court reasoned that because the driver refused the insurance company's representation, he was free to provide his own defense, which included settling with the widow. Id. at 746. The court held "that the insurer's potential obligation to pay also subsists when, as a result of the parties' failure to agree upon a conditional defense, the putative insured chooses to control the litigation and to effect a reasonable settlement." Id.

In the case at hand, Jacobs never rejected the defense provided by UNIC, and therein lies the critical difference between Jacobs's situation and the circumstances in Taylor. Because Jacobs accepted the defense, he gave UNIC exclusive control of the litigation. By neither rejecting the defense nor acquiring UNIC's consent, Jacobs breached the terms of the policy when he settled the lawsuit with the Perrys. See Baxter v. Royal Indem. Co., 285 So.2d 652, 655 (Fla.Dist.Ct.App.1973) (violating obligation to cooperate with insurer in litigation forfeits coverage), cert. discharged, 317 So.2d 725 (Fla.1975).

The holding in *Taylor* received support in *Griffen Roofing Co. v. DHS Developers, Inc.,* 442 So.2d 396 (Fla.Dist.Ct.App.1983). In the case, Griffen Roofing was insured by several insurance companies. They offered Griffen Roofing a defense under a reservation of rights, which it accepted. Griffen Roofing later claimed that such a defense was inadequate and that it was forced to obtain independent counsel to supplement the legal representation provided by the insurance companies. Griffen Roofing argued that the insurance companies owed it a "complete" defense or, at least, they should pay the independent counsel's fees. *Id.* at 396. The court concluded that a defense under a reservation of rights is adequate and that the insurance companies gave Griffen timely notice of the defense. *Id.* at 396–97. Because Griffen accepted the proffered representation, it lacked the authority to "set about defending the action with its own counsel." *Id.* at 397.

The holdings in *Taylor* and *Griffen* support this court's determination that Jacobs could not assume control over the state-court litigation until he either refused UNIC's defense or obtained UNIC's approval. Because he did neither before settling the case with the Perrys, he acted at his own risk.

### III. Conclusion

Jacobs violated the terms of the UNIC policy in three ways: first, he did not give UNIC written notice of his claim within the discovery period; second, he cut off the discovery period when he obtained the same type of insurance coverage from Universal; and, third, he entered the settlement agreement with the Perrys without UNIC's permission and while still relying on the defense UNIC provided him. In acting contrary to the provisions of the policy, Jacobs relinquished coverage and relieved UNIC of its liability on the insurance claim. Therefore, UNIC does not have to defend Jacobs in the state-court action against the Perrys, and UNIC does not have to pay the $100,000.00 settlement agreement between Jacobs and the Perrys.

It is SO ORDERED.