943 So.2d 807 (2006)
THE DOCTORS COMPANY, Appellant,
v.
HEALTH MANAGEMENT ASSOCIATES, INC., Appellee.
Nos. 2D05-1639, 2D05-2863 to 2D05-2866.
District Court of Appeal of Florida, Second District.
September 13, 2006.
Rehearing Denied December 13, 2006.
*808 Mark Hicks, Brett C. Powell, and Ellen Novoseletsky of Hicks & Kneale, P.A., Miami, for Appellant.
Charles P. Schropp of Schropp, Buell & Elligett, P.A., Tampa, and Robert L. Rocke and Jodi L. Corrigan of Rocke, McLean & Sbar, Tampa, for Appellee.
VILLANTI, Judge.
The Doctors Company (TDC) appeals the final summary judgments that determined it was required to defend and indemnify Health Management Associates, Inc. (HMA) in five separate claims. Because the insurance policy at issue did not provide for coverage of the claims, we reverse and remand for the trial court to enter final summary judgments in favor of TDC.
TDC issued a Hospital and Healthcare Facility Liability Insurance Policy to HMA for the period of October 1, 2001, through October 1, 2002. Subsequent to the expiration of the policy period, HMA submitted five claims for money damages. TDC denied coverage because it contended that, as required by the policy's terms, the claims were neither submitted as claims within the policy period nor as "probable claim events" within sixty days of the incidents giving rise to the claims.
The insurance policy at issue contains two forms of coverage: "claims made" and "probable claim events." A claims-made policy "provides coverage for any claim that actually is made during the policy period arising out of an incident which actually occurred during the period." Arad v. Caduceus Self Ins. Fund, Inc., 585 So.2d 1000, 1001 (Fla. 4th DCA 1991). A claim under this coverage must include a claim for money damages. Although not typical, the policy also provided extended coverage beyond the policy period for probable claim events under specific conditions. Probable claim events coverage, as provided for in this policy, does not include an initial claim for money damages. Rather, it is a form of insurance that, if specific conditions are complied with, effectively extends coverage beyond the policy period. It is the effect of this extended coverage to certain probable claim events that is at issue in this appeal.
The extended coverage in this policy is contained in Section III, Coverage A of the insurance contract and provides:
YOUR liability is covered under this Policy only if and when:
. . . .
(2) WE receive a Claim Report during this Policy Period.

If a Probable Claim Event described in a Claim Report received by US during this Policy Period results in a Claim, the Claim shall be deemed for all purposes to have been first made against YOU while this Policy is in effect.
If during this Policy Period, WE [TDC] receive a written report of a . . . Probable Claim Event meeting all of the requirements for coverage in effect during this Policy Period, all subsequent Claims, at any time, of any nature, by any one, arising out of YOUR rendering or failing to render Facility Services at any time to the same person or persons shall be deemed for all purposes to be a single Claim reported to US during this Policy Period, and as such, these . . . reported Probable Claim Events will be subject to all the provisions in effect during this Policy Period, including OUR Limits of Liability.
*809 The Definitions section of the insurance contract defines a Probable Claim Event and sets forth certain requirements: "23. Probable Claim Event means a Facility Services Incident that is reasonably likely to give rise to a Claim, and for which YOU provide all of the following information[1] to US in a Claim Report submitted with 60 days of the Incident." Paragraph 11 defines Facility Services Incident as "an event, other than a General Liability Incident, that takes place while rendering or failing to render Facility Services." Paragraph 10 defines Facility Services as "those health care or medical services YOU normally provide to patients as a health care facility or health care provider." The apparent advantage of the provision for HMA is that it avoids the need to obtain "tail coverage"[2] for properly-filed probable claim events that relate back to the policy period. As this case demonstrates, except as to timely-noticed and documented probable claim events, the coverage is not designed to otherwise replace the need for an insured to purchase tail coverage.

TRIAL COURT PROCEEDINGS
HMA filed a complaint for declaratory relief in five separate cases seeking liability coverage under the policy for medical malpractice claims brought against it after the policy period expired. HMA filed motions for summary judgment, and TDC filed cross-motions for summary judgment. Following a hearing, the trial court granted HMA's motions and denied TDC's. The court ruled that "the 60 day requirement found in the definition of Probable Claim Event is a condition of coverage and does not define the scope of coverage. Thus, coverage is not precluded by Plaintiff's failure to comply with the 60 day requirement in reporting the subject Incidents." The court further found, and TDC did not dispute, that TDC was not prejudiced by HMA's failure to comply with the sixty-day notice requirement. Final summary judgments were subsequently entered in favor of HMA, and the consolidated cases timely appealed.

APPLICABLE LAW
Insurance contracts, just like any other contract, "should receive a construction that is reasonable, practicable, sensible, and just." Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So.2d 26, 29 (Fla. 2d DCA 2004) (citing Weldon v. All Am. Life Ins. Co., 605 So.2d 911, 915 (Fla. 2d DCA 1992)). Insurance policy provisions excluding or limiting the insurer's liability are construed more strictly than coverage provisions. Purrelli v. State Farm Fire & Cas. Co., 698 So.2d 618, 620 (Fla. 2d DCA 1997). Limiting provisions must be construed in favor of the insured if they are ambiguous or reasonably susceptible to more than one meaning. Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1140 (Fla. 1998). "[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). A single policy provision should not be considered in isolation, but rather, the "contract shall be construed according to the entirety of its terms . . . *810 as set forth in the policy and as amplified" by the policy application, endorsements, or riders. Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 166 (Fla.2003) (quoting § 627.419(1), Fla. Stat. (2002)). Ambiguity does not exist merely because an insurance contract is complex and requires analysis to interpret it. Id. at 165. Where no ambiguity exists, the policy shall be construed according to the plain language of the policy as bargained for by the parties. Anderson, 756 So.2d at 34. Finally, absent ambiguity, waiver, estoppel or contradiction of public policy, courts are not authorized to extend coverage beyond the plain language of the policy. Velasquez v. Am. Mfrs. Mut. Ins. Co., 387 So.2d 427, 428 (Fla. 3d DCA 1980).

ANALYSIS
Applying these principles, we conclude that the trial court erred in determining that the sixty-day requirement for probable claim event coverage was a condition of coverage rather than a term defining the scope of coverage. The plain language of the policy allows for coverage of any claims actually made during the policy period arising out of an incident that occurred during the policy period. The plain language of the policy also had an additional provisionnot like any typical claims-made policy. This additional provision provided limited coverage for incidents that occurred during the policy period but that did not result in claims until after the expiration of the policy on the condition that the insured reported the incident to TDC (1) during the policy period and (2) within sixty days of the incident, as explained by the definitions of probable claim event, which we are required to read into each term so used throughout the policy. These two requirements clearly define the scope of this additional coverage for claims not actually made during the policy period.[3] To find otherwise would defeat the purpose of claims-made coverage and expand it beyond the scope contracted for by the parties. As the parties noted in their briefs, if these probable claim events, at any time during the policy period, turned into claims for money damages, then coverage would be available as claims were made. Because this did not happen and the probable claim event policy conditions were not met, any future claims for money damages made after the policy expired could not relate back and be covered under the policy.
As contended by TDC, a prejudice analysis is not reached under the straightforward terms of this policy. We are guided in our holding by Gulf Insurance Co. v. Dolan, Fertig & Curtis, 433 So.2d 512 (Fla.1983), which denied claims-made coverage for a claim alleged to have occurred during the policy period but not reported to the insurer until after the policy expired. "Coverage depends on the claim being made and reported to the insurer during the policy period." Id. at 515. To hold otherwise would be to effectively rewrite the policy, converting it to an "extension of coverage to the insured gratis. . . . This we cannot and will not do." Id. at 515-16. Similarly, even if the probable claim event is reported within the policy period, it is ineffective unless it is reported within "60 days of the [i]ncident." It is undisputed that HMA failed to report any *811 of the subject incidents as claims or as probable claim events within the required sixty-day period. Thus, prejudice is not a factor here that can extend coverage that has expired.
We recognize that compliance with both requirements for probable claims event coverageto report incidents (1) during the policy period and (2) within sixty days of the incidentmeans that as the policy nears its expiration, the insured has less than sixty days to report. However, we refuse to rewrite the language of the policy to provide coverage beyond what the parties have contracted.
For the reasons stated above, we reverse the final summary judgments in favor of HMA. We direct the trial court to vacate those judgments on remand. Because TDC was entitled to summary judgment as a matter or law, we remand with directions to the trial court to enter final summary judgments in favor of TDC.
Reversed and remanded.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] The information required is: (a) date, time, and place of the Incident; (b) a detailed description of what happened; (c) the name and address of the injured party; (d) the names and addresses of all witnesses; and (e) the expected nature and amount of damages.
[2] "Tail coverage" is a supplemental coverage available to protect the insured in "the future for claims regarding incidents that occurred during the policy period but which were not presented until after the policy period." Arad, 585 So.2d at 1001.
[3] It appears that the trial court was unable to interpret the phrase "during this Policy Period" as less than the full period of time noted in the policy when the claim was based upon a probable claim event as opposed to a claim for monetary damages. However, we are aware of no statutory or public policy prohibitions that would prevent the parties from engaging in a contract providing for varying coverage terms. See Velasquez, 387 So.2d 427.