[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15102
_____

D.C. Docket No. 6:12-cv-01680-GAP-DAB

LAKE BUENA VISTA VACATION RESORT, L.C.,
a Florida limited liability company,

Plaintiff-Counter Defendant-
Appellant Cross-Appellee,

versus

GOTHAM INSURANCE COMPANY,
a New York corporation,

Defendant-Counter Claimant-
Appellee Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(December 19, 2014)

Before MARTIN and ANDERSON, Circuit Judges, and MORENO,* District
Judge.

_____

*Honorable Federico A. Moreno, United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

This is a case involving an attempt to recover under a professional services liability insurance policy issued by Gotham Insurance Company ("Insurance Company" or "Company") to Coastal Title Services, Inc.   Ira Hatch and his wife were the principals of Coastal.  Coastal worked with Lake Buena Vista Resort, L.C. ("LBV") in developing a planned luxury resort (San Marco) in Orange County, Florida.   Coastal performed a title search, closing, escrow and other professional services for the project.  As part of the arrangements among the parties, prospective purchasers of condominium units made escrow deposits which were held by Coastal.  Some of the deposits were stolen from the Coastal escrow account, and the San Marco project failed.   The Matthews, purchasers of condominium units, filed suit against Coastal, Hatch, and LBV (the underlying suit).  LBV filed cross-claims against Coastal and Hatch.  With respect to Coastal, LBV alleged in its cross-claim  that Coastal (along with Hatch) "intentionally and fraudulently defalcated, converted and/or misappropriated … deposits from [Coastal's] escrow trust account."  Coastal defaulted in the underlying suit and LBV obtained a large default damage judgment as well as all of Coastal's property, including any rights Coastal might have to recover under the liability insurance policy issued by Insurance Company (the "Policy").   LBV filed the instant suit

2

against the Insurance Company to recover on the basis of the tortious acts of Coastal (acting through Hatch).

The Policy provided a type of coverage known as "claims made and reported." It covered acts, errors and omissions that occurred "[d]uring the Policy Period, and then only if [a] claim is first made against [Coastal] during the Policy Period and is reported to [Insurance Company] in writing during the Policy Period." The Policy Period was originally scheduled to run from March 1, 2007, to March 1, 2008. Coastal financed the Policy through Premium Assignment Corporation ("PAC"), which paid Insurance Company the entire annual premium in exchange for monthly payments from Coastal. PAC was given a power of attorney to cancel the Policy if it did not receive the monthly payments from Coastal.

Because Coastal did not pay the monthly premiums to PAC, PAC, after due notice to Coastal, sent the following "Notice of Cancellation" to the Insurance Company on October 3, 2007. The Notice of Cancellation stated in conspicuous print at the top "Cancellation Date 10/03/2007." The Notice of Cancellation also stated in its text: "This cancellation is effective one day after the above captioned date, at the hour indicated in the policy as the effective time." The relevant provision in the Policy indicates that 12:01 a.m. is the effective time.

3

The crucial issue for our resolution of this appeal is a determination of the effective date of the foregoing Notice of Cancellation, and whether a claim was made against the insured—Coastal—and also reported to the Insurance Company during the Policy Period and before the effective date of PAC's Notice of Cancellation. The only relevant communication to the Insurance Company that might arguably constitute a claim upon which LBV could rely in seeking coverage was a note from Ira Hatch on behalf of Coastal dated October 4, 2007, and received by the Insurance Company on October 10, 2007.  We can assume arguendo that Hatch's note could qualify[1] if it had been reported to the Insurance Company during the Policy Period.   However, for the reasons indicated below, we hold that the effective date of PAC's Notice of Cancellation was before the effective date of any claim against Coastal.  Thus the coverage expired, probably on October 4, 2007, at 12:01 a.m., but in any event before any valid claim was made.[2]

We first examine the relevant policy provisions.  As noted, the Policy provides 12:01 a.m. as the hour indicated in the Policy as the effective time.  In addition, Section VIII of the Policy is entitled "Cancellation" and it provides in relevant part:

---

[1]    We note below in footnote 4 that Hatch's note identified a "possible claim" that might well qualify as a "Notice of Circumstances" but does not qualify as a full-blown claim.

[2]    As discussed below, we need not definitively decide that the Notice of Cancellation was effective on October 4, 2007, at 12:01 a.m., rather than on October 5, 2007, at 12:01 a.m.

4

VIII.  CANCELLATION:

A.  This Policy may be cancelled by the NAMED INSURED by surrender thereof to the Company or any of its authorized representatives, or by mailing to the Company written notice stating when thereafter cancellation shall be effective.

…

C.  The time of the surrender or the effective date and hour of cancellation stated in the notice shall terminate the Policy Period.  The mailing of such notice as aforesaid, whether by ordinary mail or by certified mail, shall be sufficient proof of such notice.

Thus, Section VIII A. and C. expressly provide for cancellation by the insured at an effective date and hour as stated in the Notice of Cancellation.  Moreover, the relevant Florida statute expressly provides for cancellation on behalf of the insured by a premium finance company possessing a power of attorney, as occurred here.  In particular, the statute provides:

627.848.  Cancellation of Insurance Contract Upon Default

(1)  When a premium finance agreement contains a power of attorney for other authority enabling the premium finance company to cancel any insurance contract listed in the agreement, the insurance contract shall not be cancelled unless cancellation is in accordance with the following provisions:

…

(c)  Upon receipt of a copy of the cancellation notice by the insurer or insurers, the insurance contract shall be cancelled as of the date specified in the cancellation notice with the same force and effect as if the notice of cancellation had been submitted by the insured herself or himself, whether or not the premium finance company has

5

complied with notice requirement of this subsection,[3] without requiring any further notice to the insured or the return of the insurance contract.

Thus, both the Policy itself and the statute expressly provide that Notice of Cancellation can fix the effective date and hour of cancellation, whether the cancellation be by the insured or by a premium finance company with appropriate power of attorney.

However, LBV argues that Section VIII. A. of the Policy requires that the Insurance Company receive advanced notice of the cancellation date. Thus, LBV argues that, in order to cancel the Policy effective as of the end of the day, October 3, 2007, PAC was required to provide the Insurance Company written notice thereof before October 3, 2007. LBV argues that this is the meaning of the word "thereafter" in Section VIII. A. ("This Policy may be cancelled by the Named Insured … by mailing to the Company written notice stating when thereafter cancellation shall be effective."). We reject this argument. The plausible reading of the provision is that the word "thereafter" means after the written notice. This construction was borne out by the case law. In <u>Allstate Insurance Co. v. Doody</u>, 193 So.2d 687 (Fla. 3d DCA 1967), the Florida court construed virtually identical policy language to mean "no more than that the insured may not select a

---

3    There is no issue here with respect to PAC's having complied with all notice requirements. As above noted, PAC gave the required ten-day notice of its intent to cancel the Policy unless the defaulted installment payments were received within ten days. LBV points to no other required notice.

6

cancellation date prior to the date of the notice." The provision prevents an insured from obtaining a retroactive cancellation, after having received the benefit of coverage through the date of sending the cancellation notice.[4]

LBV next makes an alternative argument. Even assuming that the Policy and the statute permit the Notice of Cancellation to fix the effective date of cancellation so long as it is not before the notice itself, and even assuming that the Policy does not require advanced notice to the Insurance Company, LBV argues in the alternative that the effective date of the instant Notice of Cancellation was October 5, 2007, at 12:01 a.m. Then, LBV argues, because Hatch's note was dated October 4, 2007, the claim was made and reported to the Insurance Company during the Policy Period. As noted above, the Notice of Cancellation provided: "This cancellation is effective one day after the above-captioned date (October 3, 2007) at the hour indicated in the Policy as the effective time." LBV argues that the term "one day" should be construed to mean 24 hours, which would make the effective date October 5, 2007, at 12:01 a.m. Although we believe that the most plausible construction of the Notice of Cancellation is that it intended October 3, 2007, to be the last day of coverage (and it was so construed by the endorsement

---

[4] LBV relies on Southern Group Indemnity, Inc. v. Cullen, 831 So.2d 681 (Fla. 4th DCA 2002). However, that reliance is misplaced. The policy in Cullen expressly provided that cancellation by the insured required "giving us advanced written notice of the date cancellation is to take effect." Id. at 682 (emphasis in original). Because of that provision, the court held that the "company could not … make cancellation effective prior to the insurer receiving notice of the cancellation." Id. The court reasoned that no earlier cancellation date could be "reconciled with the advance notice requirement." Id. at 683.

issued by the Company pursuant to the Cancellation Notice), we need not definitively so decide.   Even if the effective cancellation date were October 5, 2007, at 12:01 a.m., the claim (Hatch's note) was not reported to the Insurance Company until October 10, 2007, when the Company received it.[5]

Finally, LBV argues that the Insurance Company has waived the right to assert the defense that Coastal cancelled the Policy before Hatch's claim was made and reported.  LBV points out that the Company's October 18, 2007, response to Hatch's note denied coverage on the basis of exclusions for intentional, fraudulent actions, and did not mention a defense that the Policy had been cancelled.   LBV argues that the cancellation defense is precluded by common law estoppel and by the Florida Claims Administration Statute ("FCAS"), Fla. Stat. §627.426. However, the Florida Supreme Court has held that estoppel may not be used to

---

[5]     Although we need not definitively decide the issue in this case, the Florida case law seems to require that the insurer receive the claim within the Policy Period, as opposed to the insured mailing the claim within the Policy Period.  See Gulf Ins. Co. v. Dolan, Fertig & Curtis, 433 So.2d 512, 514 (Fla. 1983) (defining the type of policy at issue here as "a policy wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term.") (emphasis added) (internal quotation omitted); see also Jennings Const. Svcs. v. Ace Am. Ins., 783 F. Supp. 2d 1209, 1213 (M.D. Fla. 2011) (an insurance company's "duty to defend" does not arise unless and until it receives notice from the Insureds during the policy period.").  However, even assuming that mailing a full-blown claim within the Policy Period might be effective, it is clear in this case that Hatch's note does not, by itself, constitute a full-blown claim; at most, it might qualify as a "Notice of Circumstances" under Section VII, which requires the insured to give written notice of any act, error or omission which could reasonably be expected to give rise to a claim against the insured.  With respect to such a Notice of Circumstances, the Policy expressly requires that the insurer actually receive the notice during the Policy Period.   See Section VII ("If, during the Policy Period, the Company shall be given written notice of any act, error, omission … which could reasonably be expected to give rise to a claim against the insured under this Policy, any claim which subsequently arises out of such act, error, omission … shall be deemed to be a claim made during the Policy Period in which the written notice was received.").

8

create or extend coverage, and has held that the FCAS is in the nature of an estoppel and that expiration of a policy or express exclusion of coverage under a policy are not "coverage defenses" to which the statute applies.   AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998 (Fla. 1989).   There, the Supreme Court of Florida held as follows:

> Section 627.426(2), by its express terms, applies only to a denial of coverage, "based on a particular coverage defense," and in effect works an estoppel.  This court recently reiterated the general rule that, while the doctrine of estoppel may be used to prevent a forfeiture of insurance coverage, the doctrine may not be used to create or extend coverage. … Therefore, we hold that the term "coverage defense," as used in §627.426(2), means a defense to coverage that otherwise exists.  We do not construe the term to include a disclaimer of liability based on a complete lack of coverage for the loss sustained.   Under this construction, for example, if the insurer fails to comply with the requirements of the statute, it may not declare a forfeiture of coverage which otherwise exists based on a breach of a condition of the policy.  However, its failure to comply with the requirements of the statute will not bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage sought is expressly excluded or otherwise unavailable under the policy.

Id. at 1000.  As a result of the cancellation of the Policy in this case, before Hatch's note was received by the Insurance Company, there was simply a lack of coverage in this case.[6]  In light of our decision that there was a complete lack of coverage, we need not address the other issues about which the parties debate.

---

[6]    LBV also argues that, upon cancellation, the Insurance Company refunded to PAC an amount of premiums indicative of continuing insurance coverage until early November of 2007. We reject this argument also, as LBV's calculations are obviously inconsistent with Policy provisions.

The judgment of the district court is affirmed, albeit on grounds that differ from those relied upon by the district court.

AFFIRMED.