John JONES, Movant,

v.

BITUMINOUS CASUALTY CORPORATION, Huston Partin, Darrell Petry, Dean Petry, Ronnie Petry, Elmer Petry, Robert Petry, Clanis Partin, Michael Paul, Mitchell Powers, Glenous Lawson, Steve Randle, Rick Curnett, Larry Walker, Carl Mays, Lonnie Hamblin, S & J Mining Company, Respondents.

No. 90–SC–746–DG.

Supreme Court of Kentucky.

Dec. 19, 1991.

Guy E. Millward, Jr., Millward and Jewell, Barbourville, for movant.

David C. Long, Robert S. Walker, III, Marco M. Rajkovich, Lexington, for respondent, Bituminous Cas. Corp.

Paul Baker, Penny R. Warren, Warren & Baker, Artemus, for respondents, Huston Partin, et al.

LEIBSON, Justice.

Bituminous Casualty Corporation, the respondent, filed a Declaration of Rights action in Knox Circuit Court seeking a judgment declaring it has "no obligation or duty to appear and defend ... or to indemnify" under a liability insurance policy issued to Huston Partin and others doing business as S & J Mining Company, with regard to injuries sustained by John Jones, the movant, in an explosion on the mining company's premises occurring February 7, 1988.

At one point John Jones had been a partner in the enterprise, but at the time of the explosion he was no longer associated with it. He testified that he was revisiting the premises to check on some equipment and to see when the mine would be reopened. He suffered serious injuries when a fire barrel kept on the premises exploded while in use. At the time of the explosion Huston Partin was either the principal party or the sole owner in S & J Mining Company.

The insurance carrier, Bituminous Casualty, was not notified of the occurrence for six and one-half months. The trial court rendered summary judgment in favor of the insurance carrier, declaring "the policy in question is voided because of the insured's breach of the policy requirement of prompt notice." Jones argued the insurance carrier suffered "no prejudice" from the delay in providing notice, but the trial court made its decision on the basis that prejudice is not required. The Court of Appeals has affirmed. We have accepted discretionary review, and we reverse for reasons that follow.

Huston Partin testified by deposition that he purchased the public liability insur-

ance policy at issue because he was required by government authorities to do so in order to obtain his mining permit. Kentucky Administrative Regulation, 405 KAR 10:030, Sec. 4, requires a public liability insurance policy to cover personal injury and property damage to others, including damage caused by the use of explosives.

The policy in question is designated "Commercial General Liability Coverage." The policy period was from June 11, 1987 to June 11, 1988. Throughout the time span of coverage the partners in S & J Mining changed, continually, except for Huston Partin. John Jones became a partner in December 1987, and remained one until the mine was shut down two weeks before the explosion on February 7, 1988.

According to his deposition, Jones went back to the premises to see if the mine owner, Huston Partin, had any plans to reopen in the near future and to check on equipment owned by a different company, Nan Belle Corporation, where Jones was also employed, which was still located at the mine site. Jones and others who had come to the site to see if the mine was going to be reopened started a fire in a fire barrel located on the premises to provide warmth. Some time later Jones went back to the barrel to poke up the fire and the barrel exploded. His right leg was amputated and his hearing and eyesight were permanently impaired as a result of the explosion. Huston Partin testified by deposition that state and federal investigators had reported the explosion was caused by powder (explosives) in the barrel. Subsequently he was cited by the government as the mine operator for a violation generated by his mishandling of explosives.

John Jones testified that he had no idea as to the cause of the explosion, and for some time thought someone had intentionally tried to blow him up. It was only after completion of the investigation that John Jones considered the explosion might have been an accidental occurrence and the subject of a liability insurance claim.

Huston Partin learned of the explosion and injury to Jones on the day it occurred, but he seems to have been unaware he had insurance that might cover Jones' injury. Thus he failed to notify his insurance carrier of the injury. Indeed, for whatever reason, whether because his financial circumstances render him judgment proof or otherwise, Partin has shown little interest in these proceedings, having failed to respond to his insurance carrier's motion for summary judgment or to appeal the declaratory judgment denying him coverage. Nevertheless, it is quite evident that the real party in interest in the coverage question is Jones, the victim of the explosion.

The insurance carrier, Bituminous Casualty, first became aware of the occurrence through a letter sent to Partin by Jones' attorney, dated August 20, 1988, with a copy to Partin's insurance agent, Energy Insurance Agency, advising Jones intended to pursue a claim. This agency in turn reported the potential claim to Bituminous Casualty on August 24, 1988.

The particular provision in the policy with which we are concerned is in "Section IV—COMMERCIAL GENERAL LIABILITY CONDITIONS." This Section includes multiple, diverse conditions pertaining to obligations of both the insurer and the insured. The one in question is:

"2. Duties In The Event Of Occurrence, Claim Or Suit.

a. You must see to it that we are notified promptly of an 'occurrence' which may result in a claim."

"Section V" of the policy covers "DEFINITIONS" and provides:

"9. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The trial court decided this prompt notice clause of the policy was breached by the six and one-half months' delay between the date of the occurrence and the date the occurrence was first reported to the insurance carrier, and further, that this breach was fatal to the coverage without regard to whether the liability insurer sustained prejudice from the delay in giving notice. The trial court cited as authority the view that such "prompt notice" requirements are strictly a matter of contract law, and, as

such, "a condition precedent to recovery on the policy." *Reserve Ins. Co. v. Richards*, .Ky., 577 S.W.2d 417, 419 (1979). In addition to the *Reserve Ins. Co. v. Richards* case, the trial court's summary judgment cited as precedent *Aetna Casualty & Sur. Co. of Hartford, Conn. v. Martin*, Ky., 377 S.W.2d 583 (1964), *Standard Accident Insurance Co. v. Sonne*, 128 F.Supp. 83 (W.D.Ky.1954), and *Shipley v. Kentucky Farm Bureau Ins.*, Ky., 747 S.W.2d 596 (1988).

However, although the leading case, *Reserve Ins. Co. v. Richards*, expressed the view that notice is a condition precedent and prejudice from the delay is not material, as Justice Wintersheimer pointed out in his dissent in *Shipley*, in fact "[i]n *Richards, supra*, the liability carrier did not receive notice until after judgment was entered against the insured which denied the insurance company any opportunity to defend." 747 S.W.2d at 599. The three judge dissent in *Shipley* took the position there was a factual question involving both whether the insured had exercised "reasonable diligence" in providing notice considering the circumstances, and whether the delay in providing notice had prejudiced the insurer.

A recent annotation on the subject in 32 A.L.R. 4th 141 addresses the "Modern Status of Rules Requiring Liability Insurer[s] to Show Prejudice to Escape Liability Because of [the] Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers." It seeks to cover all the more recent cases on this subject from all jurisdictions, including those following a "traditional" view that the "liability insurer need not show that it was prejudiced by an insured's unreasonable and unexcused omission or delay in giving notice," *Id.* at 146, and those "representing a modern trend away from the traditional that prejudice to a liability insurer is immaterial" to a new position that "a liability insurer is required to show that it was prejudiced by the insured's omission or delay." *Id.* at 157. Kentucky, citing *Reserve Ins. Co. v. Richards, supra*, is listed among those states still using the so-called "traditional" view.

Without attempting to summarize the multitude of cases listed and discussed in the ALR Annotation, and acknowledging that there are various gradations in adherence to both the "traditional view" and the "modern trend," it suffices to say that a substantial majority now supports the modern trend, holding that an insurer cannot withdraw coverage on the ground that a notice condition has not been met unless the insurer can show that it was prejudiced by the act of the insured. Allowing for certain difficulties in doing the accounting, the ALR Annotation and its Supplement provide cases from some 29 other states now holding that the insurer must show prejudice, and only about 20 still adhering to the view that the presence or absence of prejudice is immaterial. The traditional view has become the minority view, and the view requiring proof of prejudice before invoking a forfeiture now represents the mainstream of American jurisprudence on this subject.

■ The time has come for Kentucky to reconsider whether failure to provide prompt notice should automatically defeat liability insurance coverage regardless of circumstances. While we fully recognize the value of *stare decisis*, we also recognize our obligation to modify or overrule precedent which is no longer viable in terms of present development of the law.

There are at least four major features in the status of insurance law as it has presently evolved in Kentucky (utilized in varying degrees by the cases from other jurisdictions rejecting the rule of strict contractual construction) which make it unreasonable to follow *Reserve Ins. Co. v. Richards, supra*, in present circumstances. They are:

1) Contracts of Adhesion. Standard form insurance policies such as this are recognized as contracts of adhesion because they are not negotiated; they are offered to the insurance consumer on essentially a "take it or leave it" basis without affording the consumer a realistic opportunity to bargain. As to contracts of

adhesion, we stated in *Wolford v. Wolford*, Ky., 662 S.W.2d 835, 838 (1984):

> "If the contract has two constructions, the one most favorable to the insured must be adopted. [Case cited.] If the contract language is ambiguous, it must be liberally construed to resolve any doubts in favor of the insured. [Case cited.]"

■ A strict forfeiture interpretation of the prompt notice requirement excludes from the equation both the reasons why the insured failed to give prompt notice, such as whether a layman would realize that there was a covered occurrence, and the question whether the insurance carrier suffered any substantial prejudice from the delay. Absent language in the contract clearly spelling out the meaning and parameters of prompt notice and automatic forfeiture consequences, the reach of the term and the consequences are vague. The policy has a latent ambiguity which is subject to the rule of construction that applies to a contract of adherence.

■ 2) The "doctrine of reasonable expectations." In *Woodson v. Manhattan Life Ins. Co. of New York*, Ky., 743 S.W.2d 835, 839 (1987), we summarized from R.H. Long's "The Law of Liability Insurance," Sec. 5.10B:

> "The gist of the doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation."

While recognizing that the policy language clearly imposes a duty on the insured to promptly notify the company, by failing to define prompt notice or to warn of a forfeiture, this result falls beyond the reasonable expectations of the ordinary insurance consumer.

3) Statutory coverage. Huston Partin purchased this policy of public liability insurance because it was required by law in order to obtain a mining permit for the benefit of those who would be exposed to the risk involved by the mining operations. The insurance was required by administrative regulations enacted pursuant to statute, and as such a declaration of public policy. In *Bishop v. Allstate Ins. Co.*, Ky., 623 S.W.2d 865, 867 (1981), we struck down the "household" exclusion clause in an automobile liability insurance contract "to the extent that [such exclusions] dilute or eliminate the *minimum* coverage requirements of the MVRA." *Bishop v. Allstate* has become a leading case on interpreting policies purchased to provide statutory coverage. We have recently cited and applied it in different but similar circumstances in *Chaffin v. Kentucky Farm Bureau Ins. Co.*, Ky., 789 S.W.2d 754 (1990) and *Beacon Ins. Co. of America v. State Farm*, Ky., 795 S.W.2d 62 (1990). This case presents a similar problem.

■ While we recognize that insurance carriers have the right to impose reasonable conditions and limitations on their insurance coverage even where coverage is required by law, nevertheless the question then becomes the reasonableness of the condition as a limitation on public policy as opposed to one of strict contract considerations between private parties where no public interest is involved. Recognizing this, whereas a clause requiring prompt notice is reasonable, and a clause defeating coverage where notice unreasonably delayed causes prejudice to the insurer is appropriate, a clause working a strict forfeiture regardless of prejudice unreasonably interferes with coverage required by mine safety regulations.

■ 4) Premiums. The insurance carrier has argued that such clauses are essential from an actuarial standpoint in order to price the insurance according to the risk. Whereas this argument is valid with reference to imposing on the insurer risks which are unreasonable and unforeseeable, such is *not* the case with *this* clause in *this* policy. Where there has been no prejudice to the insurer from the delay in notice, there has been no increase in the risk. On the contrary, in the absence of prejudice a strict forfeiture clause simply provides the insurance company with a windfall. By adopting a rule requiring proof of prejudice

from a delay in notification, all the insurance company is being required to do is to take the risk it was paid to take rather than escape liability for coverage otherwise provided.

Our decision in this case is not without precedent. In *Newark Ins. Co. v. Ezell*, Ky., 520 S.W.2d 318 (1975), a policy condition pertaining to uninsured motorist coverage required the insured to obtain written consent of the company before prosecuting an action against the uninsured motorist. Absent such consent in advance the judgment could not be enforced against the insurer. We held this condition of the policy should not be subject to "strict enforcement." We stated:

> "In the field of insurance law recognition frequently has been given to the principle that an insurance company may not rely upon a noncompliance by the insured with a condition of the policy if the company has sustained no prejudice by reason of the noncompliance." *Id.* at 321.

This principle was applied because, though the insurance carrier had not been asked nor had it given "written consent" as was specified as a condition of the coverage, the facts showed that the insurance carrier's attorney was aware of the suit in progress against the uninsured motorist and failed to object or to seek to participate in the action.

Thus, Kentucky has already evidenced support for the "modern trend" against strict forfeiture regardless of prejudice in a situation markedly similar to present circumstances. For the reasons stated we overrule *Reserve Ins. Co. v. Richards*, Ky., 577 S.W.2d 417 (1979), *Aetna Casualty & Sur. Co. of Hartford, Conn. v. Martin*, Ky., 377 S.W.2d 583 (1964), and *Shipley v. Kentucky Farm Bureau Ins.*, Ky., 747 S.W.2d 596 (1988), to the extent they differ from the present opinion.

Two unanswered questions remain: (1) Should the insurance carrier have the burden of proving prejudice from the delay, or should the burden be on the claimant to prove lack of prejudice to the insurance carrier? (2) Should prejudice be measured in terms of actual prejudice or probable prejudice?

■ There are two reasons for imposing the burden on the insurance carrier to prove prejudice, rather than imposing on the claimant the burden to prove no prejudice resulted. The first is the obvious one: it is virtually impossible to prove a negative, so it would be difficult if not impossible for the claimant to prove the insurance carrier suffered no prejudice. Secondly, the insurance carrier is in a far superior position to be knowledgeable about the facts which establish whether prejudice exists. Indeed, it is difficult to imagine where the claimant would look for evidence that no prejudice exists. Thus we hold that the burden is on the insurance carrier to prove there was in fact some substantial prejudice caused by the delay in reporting the occurrence.

■ Finally, with reference to whether the insurance company's burden to prove prejudice should be stated in terms of actual prejudice or probable prejudice, we recognize that proof of actual prejudice is an unreasonable burden. We view the question of prejudice in terms of whether it is reasonably probable that the insurance carrier suffered substantial prejudice from the delay in notice. If the evidence on this issue is in conflict, or if reasonable minds could differ as to what the evidence proves in this regard, the issue is one for the trier of fact. The issue is ripe for summary judgment only where the proof is conclusive, or there has been a failure of proof, on this subject.

We reverse the Court of Appeals and the trial court. We vacate the summary judgment and remand this case to the trial court for further proceedings consistent with this Opinion.

LAMBERT, LEIBSON, REYNOLDS, SPAIN and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion in which COMBS, J., joins.

COMBS, J., dissents by separate opinion in which STEPHENS, C.J., joins.

STEPHENS, Chief Justice, dissenting.

I respectfully dissent.

This Court rewrites the insurance contract by adopting the rule that the insurer, in order to escape liability for coverage, must prove probable prejudice from a delay in notification. Section IV of said contract, clearly and unambiguously requires the insured to promptly notify the carrier of any "occurrence which may result in a claim."

The insured's untimely notice fails to comply with the condition precedent of the contract (Section IV), thus relieving the carrier of liability under the policy, because six and one-half months elapsed between movant's injury and notice to the insurance company of movant's claim. *Richards, supra.*

The majority argues that its rule requiring proof of prejudice from a delay in notification simply requires the insurance company "to take the risk it was paid to take." If indeed the case at bar, as the majority reasons, signals the advisability of adopting the "modern rule" followed by an increasing number of jurisdictions, this action must be taken by the General Assembly and not by this Court. Because the provisions of all insurance policies are approved by the insurance department, under the general authority given by the legislature, pursuant to KRS Chapter 304, modification of contract parameters should be addressed by the legislature and/or executive branch.

It is jurisprudentially sound to leave departure from our present established rule in *Richards, supra,* to the General Assembly. The majority's new rule based on the concept of prejudice negates the purpose of the contract conditions, rendering them meaningless and in effect rewrites the insurance policy, contrary to the intent of the parties clearly expressed by the language of the contract. This new rule changes legislative and executive policies implicitly expressed by the insurance department's approval of respondent's insurance contract.

If remedial action is warranted, it should be left to the legislature to respond. For these reasons, I would affirm the opinion of the trial court in finding the six and one-half month's delay between the date of the occurrence and the date it was reported to the insurance carrier as a fatal breach to the contract.

COMBS, J., joins in this dissent.

COMBS, Justice, dissenting.

I join in the dissenting opinion by the Chief Justice, and also dissent for the following additional reasons. I can identify with the plight of appellant and his family. My father was a coal miner and was killed in a slate fall in 1937. As a practicing attorney for almost a third of a century, I devoted a large percentage of my practice to coal miners and their dependents. But as a jurist I am bound by oath to support both the United States and Kentucky constitutions. Both constitutions prohibit the impairment of obligations assumed under contracts. Here the contract expressly provides as a condition precedent that there be timely notice of the claim. No convincing explanation or justification was given for the delay of more than six months. To ignore the contract provision would not only impair the obligations assumed thereunder but would in fact be rewriting the agreement.

STEPHENS, C.J., joins in this dissent.