RENDERED: MARCH 19, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1811-MR

DARWIN NATIONAL ASSURANCE COMPANY
(NOW KNOWN AS ALLIED WORLD
SPECIALTY INSURANCE COMPANY)                                    APPELLANT

|            | APPEAL FROM FRANKLIN CIRCUIT COURT |
|------------|-------------------------------------|
| v.         | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|            | ACTION NO. 15-CI-00951              |

KENTUCKY STATE UNIVERSITY                                        APPELLEE

## OPINION
## REVERSING AND REMANDING

** ** ** ** **

BEFORE: LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE: Appellant, Darwin National Assurance Company, now known as

Allied World Specialty Insurance Company (Allied World), appeals the Franklin

Circuit Court's order granting summary judgment to Appellee, Kentucky State

University (KSU). The issue is whether the notice-prejudice rule applies entitling

KSU to coverage under a claims-made-and-reported policy after providing notice

of the claim to Allied World three days late. This is a matter of first impression for

the Court.  For the following reasons, we reverse and remand with directions to grant Allied World's motion for summary judgment.

## BACKGROUND

KSU purchased a professional liability coverage policy from Allied World with a policy period from July 1, 2014 to July 1, 2015 (the "Policy").  This Policy covered any wrongful act relating to employment practices against KSU. The Policy defined "wrongful acts" as any "actual or alleged" discrimination, harassment, retaliation, workplace tort, or a wrongful employment decision committed by the insured if it related to an employee or employment applicant. Moreover, the Policy stated that a claim was deemed to have been made on the date that KSU received notice of the claim.  Additionally, any related claims were deemed to be a single claim—applying the date of notice from the earliest related claim to all other related claims if applicable.  Furthermore, the Policy provided that written notice be given as soon as discovering a possible claim but no less than ninety days after the Policy's end date.  Although KSU could have purchased a "discovery period extension," which would have extended the ninety-day period to three years, KSU did not purchase this extension.  Both parties agree that the Policy is considered a claims-made-and-reported insurance policy.

On September 2, 2015, two former KSU employees, Maifan Silitonga and Teferi Tsegaye, sued KSU for wrongful discharge and intentional infliction of

emotional distress.  Silitonga alleged that KSU discharged her from the university for a memorandum she sent, which outlined claims of mismanagement of funds by KSU and its president, Raymond M. Burse.  And, Tsegaye claimed that he was improperly demoted from his role as Vice President because of his time away to recover from a spinal surgery.  Before filing suit, Silitonga and Tsegaye filed charges of discrimination against KSU with the United States Equal Employment Opportunity Commission (EEOC) and the Kentucky Commission on Human Rights.  KSU first received notice of those charges on June 23, 2015, which was during the policy period of the Policy.

On October 2, 2015, which was ninety-three days after the Policy's coverage period, KSU provided written notice to Allied World requesting coverage for the claims.  Allied World denied coverage.

Three years passed without any reply from KSU regarding the denial of coverage.  Then, on October 1, 2018, KSU filed a third-party claim against Allied World for declaration of rights to provide coverage under the Policy, as well as claims for breach of contract, violation of the Unfair Claims Settlement Practices Act,[1] bad faith, and late payment of an insurance claim in violation of KRS 304.12-235.  Because the original plaintiffs, Silitonga and Tsegaye, settled

---

[1] Kentucky Revised Statutes (KRS) 304.12-230.

with KSU on October 22, 2018, the only remaining claim was KSU's third-party complaint against Allied World.

Both parties submitted cross-motions for summary judgment. KSU argued that the ninety-day provision was ambiguous and, thus, it should not be bound by that period to submit its claim. Moreover, KSU argued that even if the ninety-day provision applied, coverage could not be denied because of the notice-prejudice rule. Under the notice-prejudice rule, an insurer must show prejudice before rejecting a claim due to late notice. In contrast, Allied World argued the Policy was not ambiguous and, because KSU provided notice after the ninety-day period expired, Allied World could deny coverage. In addition, Allied World argued that the notice-prejudice rule does not apply to claims-made-and-reported policies. Since the Policy at issue was a claims-made-and-reported policy, Allied World asserted that it did not need to show prejudice pursuant to the notice-prejudice rule before rejecting KSU's claim.

The circuit court granted KSU's motion for summary judgment. The court found that, even though the Policy was not ambiguous regarding the ninety-day period, the notice-prejudice rule applied. In addition, the court held that if the

three-day mailbox rule from CR[2] 6.05 applied, it could be argued that the late notice was timely.[3]  This appeal by Allied World followed.

## STANDARD OF REVIEW

Generally, an order denying summary judgment is "not subject to review by this Court." *Midwest Mut. Ins. Co. v. Wireman*, 54 S.W.3d 177, 179 (Ky. App. 2001).  "The general rule under CR 56.03 is that a denial of a motion for summary judgment is, first, not appealable because of its interlocutory nature and, second, is not reviewable on appeal from a final judgment where the question is whether there exists a genuine issue of material fact." *Id.*  However, an exception exists "if the facts are not in dispute, the only basis of the ruling is a matter of law, the court denied the motion for summary judgment, entered a final judgment, and the moving party takes an appeal therefrom." *Id.*  Moreover, because summary judgments "involve no fact finding, this Court reviews them *de novo*, in the sense that we owe no deference to the conclusions of the trial court." *Goodman v. Goldberg & Simpson*, *P.S.C.*, 323 S.W.3d 740, 744 (Ky. App. 2009).

---

[2] Kentucky Rules of Civil Procedure.

[3] CR 6.05 provides that "whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail or electronic service, 3 days shall be added to the prescribed period."

## ANALYSIS

**I.  The Policy is unambiguous and, thus, is interpreted using the terms of the Policy without resorting to extrinsic evidence.**

Whether the trial court can consider evidence extrinsic to the contract depends upon whether the contract is ambiguous or the parties' intentions can be determined from the four corners of the document. *3D Enterprises Contracting Corp. v. Louisville and Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). "[I]n the absence of ambiguity, a written instrument will be strictly enforced according to its terms and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal quotation marks and footnote omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002). "[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court[.]" *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000). In addition, while interpretation of an insurance contract is a matter of law for the court, "[w]here the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries*, 82 S.W.3d 869, 873 (Ky. 2002). Therefore, absent ambiguity, "terms

in an insurance contract are to be construed according to their plain and ordinary meaning." *Hugenberg v. W. Am. Ins. Co. Ohio Cas. Grp.*, 249 S.W.3d 174, 185 (Ky. App. 2006) (citation and internal quotation marks omitted).  Once a contract's condition is unambiguously stated, courts must "give it full force and effect and abstain from making a new or different contract under the guise of interpretation[.]" *Jett v. Doe*, 551 S.W.2d 221, 223 (Ky. 1977).

KSU argues that the contract is ambiguous and that the Court should construe the language of the Policy in its favor.  We disagree.

The declarations page of the Policy, under the "NOTICES" section, states:

> **THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.**

(Emphasis in original.)  Thus, under the Policy, coverage is available for claims made against KSU during the Policy period and reported in writing to Allied World.  In addition, section five of the Policy, entitled "NOTICE OF CLAIM," states:

> A.  The **Insured(s)** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer**, at the physical or email address indicated in Item 7. of the Declarations, of a **Claim** made against an Insured as soon as practicable after the

> **Organizations's** [sic] General Counsel or Risk Manager, or any individual with functionally equivalent responsibilities, becomes aware of the **Claim**.
>
> B. Notwithstanding the above, in no event shall such notice of any **Claim** be provided to the **Insurer** later than ninety (90) days after the end of the **Policy Period** or Discovery Period if purchased. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(Emphasis in original.) This section outlines that KSU had to provide written notice of any claim no later than ninety days after the Policy expired. As the circuit court found, the Policy was not ambiguous. The Policy provided a certain reporting period and the procedure for how to notify the insurer of a claim. Thus, we analyze the unambiguous terms of the Policy without the need for extrinsic evidence.

## II. The Policy required KSU to provide written notice within ninety days after the Policy ended.

Professional liability insurance policies are usually claims-made-and-reported or occurrence policies. A claims-made-and-reported policy provides coverage for claims brought against the insured during the life of the policy, while an occurrence policy provides coverage for acts done during the policy period irrespective of when the claim is brought. Because a claims-made-and-reported policy ties notice to the insurance policy agreement, notice of the claim is considered a condition precedent to triggering the insurer's obligations under the

policy.  *See* 4 THOMAS, MARTINEZ, MAYERSON, AND RICHMOND, NEW APPLEMAN INSURANCE LAW PRACTICE GUIDE § 41.08 (LexisNexis 2021).  Therefore, courts strictly construe the reporting requirements in claims-made-and-reported policies. *Id.*  Pursuant to the Restatement of the Law of Liability Insurance, claims-made-and-reported policies have "additional purposes beyond the traditional claims-management purpose of a notice-of-claim condition.  These additional purposes are:  (a) simplifying insurers' reserving practices and (b) reducing the amount of uncertainty in insurance pricing."  RESTATEMENT OF THE LAW OF LIABILITY INS. § 35 cmt. c (AM. LAW INST. 2019).

Therefore, the difference between a claims-made-and-reported policy and an occurrence policy lies in the notice restriction.  The claims-made-and-reported policy is more restrictive, only allowing coverage on claims reported within the designated time period.  *Id.*  Whereas the occurrence policy allows a claim to be reported at any time if the claim occurred during the coverage period of the policy.  *See id.* at cmt. e.

Claims-made-and-reported policies are relatively new to insurance markets, emerging in popularity in the 1990s.  *See* Jeffrey P. Griffin, Note, *The Inapplicability of the Notice-Prejudice Rule to Pure Claims-Made Insurance Policies*, 42 CONN. L. REV. 235, 238 (2009).  These polices were "developed in part to limit insurer's [sic] exposure to claims that are reported significantly after

the end of a policy period." *Id.* The idea is that such policies limit late reporting of claims, allowing for less expensive insurance policies and, thus, lower premiums for policyholders. *Id.* As such, insurers usually prefer to issue a claims-made-and-reported policy in the professional liability context because an occurrence policy "is more susceptible to claims materializing years after the expiration of the particular occurrence policy that was in effect when the injurious act occurred." *Id.* at 240. Because of the innate risks involved with occurrence policies, insurers had to decide to either raise premiums or create a more restrictive policy for professional liability coverage in the form of claims-made-and-reported policies.

To create a claims-made-and-reported policy, many states agree that the reporting requirement of such a policy should be "contained in the main coverage clause of the contract." Lee Roy Pierce, Jr., *Professional Liability Insurance: The Claims Made and Reported Trap*, 19 W. ST. L. REV. 165, 167 (1991). And, "failure to timely report the claim means that coverage under the policy never attaches." *Id.*

Using the plain and ordinary meaning of the language in the Policy, Allied World issued a claims-made-and-reported policy to KSU for two reasons. First, coverage is only guaranteed for claims that occurred during the policy period. So, the claim had to occur between July 1, 2014 and July 1, 2015. Second,

KSU had to report and give written notice of any claim to Allied World during the policy period but no later than ninety days after the policy period expired. Accordingly, KSU was required to give written notice of any claims that occurred during the policy period by September 29, 2015.

**III.    Allied World does not need to prove substantial prejudice because the notice-prejudice rule does not apply to this claims-made-and-reported Policy.**

KSU argues that, under the Kentucky Supreme Court case of *Jones v. Bituminous Casualty Corporation*, 821 S.W.2d 798, 803 (Ky. 1991), which applied the notice-prejudice rule, Allied World had to show substantial prejudice to deny coverage of a late reported claim. We disagree.

In *Jones*, the Kentucky Supreme Court decided that the insurer must show prejudice before it rejects a claim based on late notice. *Id.* at 803. This is referred to as the notice-prejudice rule. *Id.* However, the type of policy in *Jones* is distinguishable from the Policy in this case. *Id.* at 800. First, the *Jones* policy covered any accidents within the policy coverage period, and the policy did not give a strict reporting timeline. *Id.* Moreover, the *Jones* policy required "prompt notice" of a claim but did not specify a reporting timeline. *Id.* at 800-01. We also note that, in *Jones*, the policy was considered ambiguous and construed in favor of the insured. *Id.* at 802. Finally, because the *Jones* policy did not provide a strict reporting of claims timeline, the Court considered the reasonable expectations of

-11-

the insured, holding the insured reasonably expected to receive coverage for any wrongful acts occurring within the coverage period. *Id.*

Because *Jones* held the "prompt notice" requirement was ambiguous, the Court considered extrinsic evidence to analyze the language in the policy. *Id.* at 800-01. And, the Court applied the notice-prejudice rule in deciding the case. Because the Policy between KSU and Allied World was unambiguous, this case is distinguishable from *Jones*.

Kentucky has not yet decided whether the notice-prejudice rule applies to claims-made-and-reported policies, like the Policy at issue here. However, other states have held that the notice-prejudice rule does not apply to claims-made-and-reported policies. *See* Charles C. Marvel, Annotation, *Modern status of rules requiring liability insurer to show prejudice to escape liability because of insured's failure or delay in giving notice of accident or claim, or in forwarding suit papers*, 32 A.L.R. 4th 141 (1984).

With no precedent in Kentucky on this issue, we look at different public policy considerations to determine whether to apply the notice-prejudice rule to claims-made-and-reported policies. We begin our analysis with the Restatement of Liability Insurance § 35(2), which provides:

> With respect to claims first reported after the conclusion of the claim-reporting period in a claims-made-and-reported policy, the failure of the insured to satisfy the claim-reporting condition in the policy excuses an insurer

from performance under the policy without regard to prejudice, except when: a) The policy does not contain an extended reporting period; b) The claim at issue is made too close to the end of the policy period to allow the insured a reasonable time to satisfy the condition; and c) The insured reports the claim to the insurer within a reasonable time.

RESTATEMENT OF THE LAW OF LIABILITY INS. § 35 (AM. LAW INST. 2019).

Applying the Restatement to this case, KSU failed to satisfy the claim-reporting condition of the Policy. And, the Restatement exceptions do not save KSU's failure. First, the Policy provided an extended reporting period of ninety days. Second, the claim was not made too close to the end of the policy period. KSU received notice of the EEOC claims on June 23, 2015. KSU had ample time to report the claims before September 29, 2015, the expiration of the ninety-day extended reported period. Based on the Restatement, the notice-prejudice rule does not apply to provide coverage to KSU under the Policy.

Many jurisdictions follow the principles written within the Restatement. For example, in *Gulf Insurance Company v. Dolan, Fertig and Curtis*, 433 So. 2d 512 (Fla. 1983), the Florida Supreme Court decided one of the earliest cases dealing with claim-made-and-reported policies and the notice-prejudice rule. "With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period . . . negates the inherent difference between the two contract types. Coverage depends on the claim being

-13-

made and reported to the insurer during the policy period." *Id.* at 515. The Florida Supreme Court held that claims-made-and-reported policies "are essentially *reporting* policies." *Id.* (emphasis in original). The Court reasoned that "[i]f a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained." *Id*. (emphasis in original). As such, "[t]his extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties." *Id.* at 515-16.

In *City of Harrisburg v. International Surplus Lines Insurance Company*, 596 F. Supp. 954, 962 (M.D. Pa. 1984), a federal court applying Pennsylvania state law also held that the notice-prejudice rule does not apply to a claims-made-and-reported policy. The Court gave three policy reasons for its decision. First, bargaining power is limited in occurrence policies but not claims-made-and-reported policies. *Id*. An insured can bargain for a policy "in which notice would not have been of the essence of the contract, or it could have obtained a policy with an extended discovery period providing coverage for claims made during the policy period and reported to the company during the extended discovery period." *Id.* Second, if the notice-prejudice rule applied to claims-made-and-reported policies, the insured would, essentially, receive extended

coverage at no extra cost. *Id.* Third, a claims-made-and-reported policy's provision requiring notice before the end of the policy period serves a different purpose compared to an occurrence policy. *Id.* "It provides a certain date after which an insurer knows that it no longer is liable under the policy, and accordingly, allows the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty." *Id.*

In Kentucky, our federal courts have addressed the application of the notice-prejudice rule to claims-made policies. In *Ashland Hospital Corporation v. RLI Insurance Company*, No. 13-143-DLB-EBA, 2015 WL 1223675 (E.D. Ky. Mar. 17, 2015), the Eastern District decided not to apply the notice-prejudice rule to a claims-made policy that contained unambiguous notice requirements as a condition precedent to coverage. This decision was affirmed by the Sixth Circuit in *Ashland Hospital Corporation v. RLI Insurance Company*, 632 Fed. App'x 271, 272 (6th Cir. 2016) (per curiam). And, in *C.A. Jones Management Group, LLC v. Scottsdale Indemnity Company*, No. 5:13-CV-00173-TBR-LLK, 2016 WL 3460445 (W.D. Ky. June 21, 2016), the Western District held that the notice-prejudice rule does not apply to claims-made-and-reported policies that clearly and unambiguously require timely notice as a condition precedent to coverage.

As Kentucky does not have any statutes or case law on the issue, we consider the policy behind applying the notice-prejudice rule to this claims-made-

and-reported Policy. First, Allied World is entitled to the benefit of the Policy as written. Applying the notice-prejudice rule to this Policy would undermine Allied World's interest in negotiating liability policies with insureds. Allied World claims that it predicts risk and financial implications associated with the types of policies it issues. Here, Allied World issued a claims-made-and-reported policy to KSU, which allowed Allied World to predict its coverage within a certain time and allowed KSU a more affordable policy.

Second, applying the notice-prejudice rule to this claims-made-and-reported Policy would rewrite the Policy. Contract law gives parties the ability to bargain and negotiate for goods or services. The notice-prejudice rule seeks to protect parties in contracts of adhesion, which are offered on a "take it or leave it" basis. *Jones*, 821 S.W.2d at 801. While many insurance contracts are contracts of adhesion, claims-made-and-reported policy contracts give more room for negotiation. Parties can decide how long to extend the reporting period and how much they are willing to pay. Here, Allied World offered an extension of the reporting period, up to three years after the policy ended. KSU chose not to purchase that extension.

Finally, applying the notice-prejudice rule to this Policy would grant KSU coverage it did not purchase. KSU and Allied World had an agreement that Allied World would provide coverage for any wrongful acts committed by KSU

for one year.  As a condition precedent to coverage, KSU had to notify Allied World of any claims within ninety days after the expiration of the Policy.  KSU received notice of the EEOC claims in June 2015 but did not report them to Allied World until October 2, 2015.  Additionally, KSU did not purchase the "discovery period extension" offered by Allied World.  If the notice-prejudice rule applied, KSU would receive the "discovery period extension" for free and without any consideration to Allied World.  Thus, the notice-prejudice rule does not apply to this claims-made-and-reported policy.

## IV.    806 KAR[4] 12:095 does not apply to a private cause of action.

KSU further argues that 806 KAR 12:095 required Allied World to accept late notice.  We disagree.

The Kentucky legislature delegated its authority to regulate insurance matters to the Kentucky Department of Insurance.  The Department of Insurance regulations are codified in Title 806 of the Kentucky Administrative Regulations.  All insurance policies issued in Kentucky are subject to regulation by the Department of Insurance.  KRS 304.2-110.  Therefore, regardless of the terms of the insurance policy, an insurer cannot engage in unfair claims settlement practices

---

[4] Kentucky Administrative Regulations.

-17-

without running afoul of the regulation. The provision at issue must be interpreted considering the Department of Insurance's regulation of the insurance field.

806 KAR 12:095 covers insurance regulations dealing with unfair claims settlement practices for property and casualty insurance. 806 KAR 12:095, Section 4(3) provides:

> Insurers shall not deny a claim based upon the failure of a first party claimant to give written notice of loss within a specified time limit unless written notice of loss is a written condition in the policy, certificate, or contract and the first-party claimant's failure to give written notice after being requested to do so is so unreasonable as to constitute a breach of the first-party claimant's duty to cooperate with the insurer.

Here, because the Policy contains a written notice of loss as a condition of the Policy, 806 KAR 12:095 does not support KSU's argument for coverage.

## V. The mailbox rule does not apply.

CR 6.05 states that "whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail or electronic service, 3 days shall be added to the prescribed period. This provision shall not apply to the service of summons by mail under Rule 4.01(1)(a)." This rule only applies to certain court-related papers. It does not pertain to contract disputes. Therefore, the rule is inapplicable to this matter, and CR 6.05 does not save KSU's late notice.

-18-

# CONCLUSION

For the above reasons, we reverse the circuit court's order and remand, directing the circuit court to grant Allied World's motion for summary judgment.

ALL CONCUR.

BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

Chad O. Propst
Ian C.B. Davis
B. Todd Thompson
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE:

M. Austin Mehr
Erik D. Peterson
Philip G. Fairbanks
Lexington, Kentucky