RENDERED: MARCH 22, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0214-MR

TERRI WALLER                                                          APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE SUSAN GIBSON, JUDGE
ACTION NO. 20-CI-003669

STATE AUTO PROPERTY AND CASUALTY
INSURANCE COMPANY                                                     APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

ECKERLE, JUDGE: Appellant, Terri Waller ("Waller"), appeals an order

granting summary judgment in favor of Appellee, State Auto Property and

Casualty Insurance Company ("State Auto"). After our *de novo* review of the

issues presented, we reverse and remand for factual findings.

# APPELLATE ERRORS

We begin with Waller's counsel's appellate errors. This case joins an expanding list of cases where a practitioner has failed to comply either with the Kentucky Rules of Appellate Procedure ("RAP"), or the predecessor appellate rules formerly in the Kentucky Rules of Civil Procedure ("CR"). *See, e.g.*, *Hamilton v. Milby*, 676 S.W.3d 42 (Ky. App. 2023); *French v. French*, 581 S.W.3d 45 (Ky. App. 2019); *Prescott v. Commonwealth*, 572 S.W.3d 913 (Ky. App. 2019); and *Hallis v. Hallis*, 328 S.W.3d 694 (Ky. App. 2010).

Here, Waller's counsel's mistakes began early, with the notice of appeal. Waller's counsel initially listed the Honorable Susan Gibson, the Trial Court Judge who authored the order on appeal, as an appellee. *See* RAP 2(A)(2) ("[A]ll parties to the proceedings from which the appeal is taken, except those who have been dismissed in an earlier final and appealable order, shall be parties before the appellate court."). Following a show cause order issued by this Court, Waller's counsel recognized his improper inclusion of non-parties and moved to dismiss Judge Gibson from the appeal. We granted the motion.

Next, a prehearing conference order was entered on March 30, 2023, directing Waller's counsel to file a designation of evidence within ten days. *See* RAP 24(B)(1)(b). Waller's counsel did not file the designation of evidence within ten days. Instead, Waller's counsel filed the designation on April 17, 2023, some

seven days late. Three days later, Waller's counsel filed in this Court a motion styled "Motion of Appellant for Order Regarding Her Designation of Evidence Filed with the Circuit Court Clerk on 04/17/23." In that motion, Waller's counsel gave two reasons for his failure to file a timely designation of record: (1) the RAP was newly adopted; and (2) storms in the area had disrupted internet service at counsel's office. This Court treated Waller's motion as a request for additional time to file Waller's designation of record, which is what should have been filed, and granted the same.

Waller's counsel next requested a 15-day extension of time to file Waller's opening, appellant's brief. Waller tendered a brief within the requested extension of time. This Court granted the motion for extension and ordered the tendered brief to be filed.

While the foregoing extension motion was not in error, some ten days after tendering the brief, Waller's counsel moved this Court to permit Waller to file an amended brief due to briefing improprieties Waller's counsel subsequently discovered. Waller's counsel averred that he realized there were over a dozen errors, largely involving citations to the record. This Court granted the motion, struck from the record Waller's original opening brief, and ordered the amended appellant's opening brief to be filed in the record.

Though somewhat corrected, the amended, appellant's opening brief still contains substantial errors. For example, RAP 31(A)(1)(c) requires briefs to use a font "no smaller than 12-point set at standard width." Waller's Statement of Points and Authorities appears to contain font smaller than 12-point set at standard width. Continuing, RAP 31(E)(1) requires citations to Kentucky cases reported after June 1886 to be in a particular style that includes a parenthetical indicating the court that rendered the decision and the year in which it was rendered. Many of Waller's citations do not comport with RAP 31(E)(1).

RAP 32(A)(3) requires an appellant's, opening brief to contain a statement of the case "with ample references to the specific location in the record supporting each of the statements contained in the summary." Waller's opening, appellant's brief contains roughly 50 citations to the record in her 13-page statement of the case, which equates to an average of five citations per page. While an average of five citations per page may suffice to be "ample," it is noteworthy here that some paragraphs contain no citations to the record. More problematic, though, are that many of the citations are not "specific" as they reference multiple pages, *i.e.*, footnote 19 references almost 100 pages of record when arguing "the policy language is misquoted by State Auto," footnote 18 references almost 80 pages of record, footnote 10 references 13 pages of record, footnote 21 references 22 pages of record, and so forth.

And some critical statements contain no supporting citation, such as Waller's statement that the Trial Court sustained State Auto's summary judgment motion. This reference is to *the order that is being appealed*, yet it contains no citation to where this order is contained within the hundreds of pages and multiple volumes of record.

The latter error becomes more glaring when coupled with Waller's failure to comply with RAP 32(A)(4) and (7). RAP 32(A)(4) requires a preservation statement at the beginning of the argument section of an appellant's opening brief. That statement should contain a reference to the record showing whether and how the appellate issue is properly preserved for review. Strict compliance is mandated, as our Supreme Court recently reiterated:

> We have strictly mandated compliance with this rule since its inception under the prior Kentucky Rules of Civil Procedure. *Skaggs v. Assad, By & Through Assad*, 712 S.W.2d 947, 950 (Ky. 1986) (citing CR 76.12(4)(c)(iv)) ("It goes without saying that errors to be considered for appellate review must be precisely preserved and identified in the lower court."). RAP 32(A)(4) does not distinguish between this Court and the Court of Appeals when prescribing the organization and contents of an appellant's opening brief. The failure of an appellant's brief to conform to the appellate rules justifies the striking of the brief under RAP 31(H)(1).

*Gasaway v. Commonwealth*, 671 S.W.3d 298, 310 (Ky. 2023).[1]

Additionally, RAP 32(A)(7) requires an appellant's opening brief to contain an appendix "that conforms with section (E) of this rule."  RAP 32(E)(1)(a) requires an appellant to attach to its appendix first an appendix index listing all items in the appendix, followed immediately by "the judgment, opinion, or order under review . . . so that it is most readily available to the court."  The order being appealed does not immediately follow the appendix index here, though.  In fact – the order is not in the appendix at all.

Waller's amended, opening brief wholly fails to comply with this rule.  Pursuant to *Gasaway*, these substantial failures could justify striking Waller's appellate brief.  671 S.W.3d at 310.  *See also* RAP 31(H)(1).  Or, we could elect to review the claims without striking the brief.  *Gasaway*, 671 S.W.3d at 311.  We reluctantly choose the latter as State Auto has not raised any issues with the briefing, the summary judgment issues are relatively straightforward, and the Trial Court's Order frames the issues well, though we ultimately review those issues *de novo*.  We caution counsel that future, repeated errors may not be countenanced and may result in sanctions.  *See* RAP 10 and RAP 31(H).

---

[1] The Supreme Court ultimately elected to refrain from imposing a sanction for multiple reasons, with the Court noting that the case was on discretionary review and "the Court of Appeals urged this Court to consider the applicability of Section 10 of the Kentucky Constitution."  *Id*. at 311.

# BACKGROUND

On or about June 26, 2018, Waller's home allegedly suffered a casualty when a tree fell on the rear portion of her house's roof. Waller was out of town and learned about the incident from a neighbor. According to Waller, she had a tree service remove the tree, and that company concluded that any damage was within Waller's homeowner's insurance deductible. Waller's Amended Complaint alleges that she verbally notified State Auto at some point, although she does not specify the date. Waller admitted in her deposition that she was unsure if she called her insurance agency and notified it about the June 26, 2018, incident. An e-mail in April of 2019 from Andrew Reilmann, an insurance adjuster with State Auto, relating to a separate incident that later occurred to the front of the house in 2019,[2] indicated Waller may have called about the June 26, 2018, incident, but elected not to make a claim:

> Mrs. Waller, I cannot include the damage to the interior or rear of the home on this claim, as it did not occur on the same date of loss. I understand you called in a claim last year, and it did not get entered. The only was [sic] for SA to provide coverage is for you to contact your agent, and enter another claim for the date of loss that the damage to the rear of the home occurred. That would be another claim, and another wind and hail deductible.

_____

[2] Waller claims that when Reilmann inspected the house, he commented to her that the rear roof was a "rubber" roof that would last "forever."

Regardless of any notice from Waller to State Auto in 2018, she admitted that she did not make an insurance claim until June of 2020, because she did not believe the damage exceeded the deductible. It is undisputed that no one from State Auto came to Waller's home to inspect the damage in 2018. Waller did not have "a roofer or anybody else go up there and take a look at [her] roof to see if there were any problems" in 2018. Waller Deposition p. 17. Waller claimed the tree removal company saw "no visible damage" on the roof.

And, in spite of the information in the April 2019-e-mail from Reilmann about "damage to the interior or rear of the home," Waller claimed in her deposition that it was not until April or May of 2020 that she started having or noticing leaking from the rear roof. She allegedly noticed water coming in the electrical area and the light in the laundry room, which is in the downstairs portion of her house. Waller supports this claim by a statement in one of her affidavits that she had a home inspection for an appraisal in July of 2019, and the appraisal did not find any leaks.

Waller claims that it was not until after the April 2020, leaking ceiling that she inspected the upstairs portion of her house, called in two professionals, and had a tarp placed on the rear roof. Danny Colvin, a roofer with All Star Construction, swore an affidavit in the instant case. Colvin inspected the roof in May of 2020 and found two damaged places where water was leaking through the

decking under the roof and into the interior of the home. Colvin stated that Waller provided photos of the June 26, 2018, incident, along with photos from April 10, 2019, where Reilmann inspected the roof for the separate incident. Colvin believed these photos showed that the roof had been damaged on June 26, 2018, and a "delayed onset" occurred where the hole in the roof became larger and larger over time, ultimately leading to water damage to the interior of the home.

Colvin averred that:

> It would cost more now to do the repairs than what it would have cost had the repairs been done 04/10/19. Based on the history and on roofing probability, the damage to the interior walls and carpet of the home of Terri Waller had not yet occurred as of 04/10/19.

Following Colvin's inspection, Waller did not contact State Auto in May of 2020. Waller claims that she had homeowner's insurance through another company at that point and needed guidance on the manner in which she should proceed. She contacted a personal adjuster, Brian Elmore, who inspected the home on May 22, 2019. Waller claims Elmore may have contacted State Auto soon thereafter. Regardless, Elmore recommended Waller contact an attorney, who, on June 22, 2020, gave notice to State Auto prior to initiating this lawsuit.[3] Waller's attorney's e-mail to State Auto avers, "This is the first notice you have had of the

---

[3] The terms of the homeowner's insurance policy required any legal actions be initiated within two years of the occurrence, thus the hastily-filed, original Complaint.

06/26/18 claim[,]" though the e-mail also notes that there may be factual errors given the newness of the case to the attorney and the need to file an action within two years per the insurance contract's terms.

At the Circuit Court, the case proceeded with discovery, and State Auto twice filed motions for summary judgment. The Circuit Court denied the first motion because it found genuine issues of material fact existed with respect to whether State Auto suffered substantial prejudice from a delay in notice, and to whether State Auto delayed in providing an inspection for coverage. However, the Circuit Court granted the second, renewed motion,[4] this time holding that there were no genuine issues of material fact, and that State Auto had demonstrated that as a matter of law it was entitled to judgment because it had proven Waller did not comply with the prompt notice provision and, further, that State Auto was prejudiced by this failure to notice the loss promptly. Waller timely appealed. Additional facts are discussed as necessary below.

---

[4] This motion relied in part on a March 14, 2022, signed affidavit from Amanda Heeke, a personal lines manager for Hyland Insurance Agency ("Hyland"), who had reviewed the agency's files regarding any notices made or claims filed by Waller regarding the 2018 and 2019 losses. Heeke averred that "Ms. Waller did not report a claim for property damage to Hyland for a June 26, 2018, loss." She also averred that Waller contacted Hyland on September 3, 2019, "regarding a potential insurance claim related to claimed tree and storm damage that occurred in 2018 including new damage she discovered upstairs, but she never requested Hyland to formally present any such claim to State Auto."

## ANALYSIS

The issue in this case principally revolves around the notice-prejudice rule, which alleviates a liability insurer from adjusting and/or defending an otherwise covered occurrence if the terms of the policy require prompt notice, such prompt notice was not given by the insured, and the insurer can demonstrate prejudice from the delay. Waller's appellate issues largely involve the giving of notice. She presents multiple, alternative arguments. First, she argues that under the notice-prejudice rule, an insured should not have a "covered occurrence" requiring "notice" to her insurer until the insured is aware that she has a claim in excess of her deductible. Waller argues that because her deductible was high, she did not file a claim with State Auto about the June 26, 2018, occurrence until she realized she had a covered occurrence in excess of her deductible. Next, Waller claims that her alleged, verbal notice of the loss to her insurance agent in 2018 satisfied the insurance contract's terms. Additionally, Waller asserts that she had no loss of which to provide notice until May of 2020, because the damages were a result of an insidious onset. State Auto counters that the notice was not promptly given and that it was prejudiced by the delay.

We hold that pursuant to the terms of the insurance contract, there remains a genuine issue of material fact regarding the timing of the notice to State Auto of the loss. Thus, we reverse and remand for further proceedings.

## STANDARD OF REVIEW

This appeal involves a grant of summary judgment. The summary judgment standard of review is well-established:

> "[t]he standard of review on appeal of a summary judgment is whether the circuit judge correctly found that there were no issues as to any material fact and that the moving party was entitled to a judgment as a matter of law." *Pearson ex rel. Trent v. Nat'l Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). Summary judgment is only proper when "it would be impossible for the respondent to produce any evidence at the trial warranting a judgment in his favor." *Steelvest, Inc., v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). In *Steelvest*, the word "'impossible' is used in a practical sense, not in an absolute sense." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992). In ruling on a motion for summary judgment, the court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Steelvest*, 807 S.W.2d at 480. A party opposing a summary judgment motion cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Id*. at 481.

*Phelps v. Bluegrass Hosp. Mgmt., LLC*, 630 S.W.3d 623, 627 (Ky. 2021) (citing *Ryan v. Fast Lane, Inc.*, 360 S.W.3d 787, 789-90 (Ky. App. 2012)) (alterations and error in original). Our appellate review involves only issues of law; thus, our review is *de novo*. *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013).

## I.    Notice-Prejudice Rule

The notice-prejudice rule allows insurance companies to avoid adjusting or defending otherwise covered claims on liability, occurrence policies if an insured does not promptly notice the insurance company of a covered occurrence and the insurance company demonstrates that it was prejudiced by the untimely notice. The rule was adopted in *Jones v. Bituminous Casualty Corporation*, 821 S.W.2d 798 (Ky. 1991). There, a claimant of a mining accident waited six and one-half months to notice the incident to the insurer of a commercial, general liability policy. *Id*. at 799-800. The policy required prompt notice of every "occurrence," the latter being defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 800. Judgment was granted in favor of the insurer on the prompt notice provision due to the six and one-half months before the occurrence was reported.

On appeal, our Supreme Court rejected Kentucky's established jurisprudence that "'prompt notice' requirements are strictly a matter of contract law, and, as such, 'a condition precedent to recovery on the policy.'" *Id*. at 800 (citations omitted). Instead, our highest Court added a requirement that liability insurers under occurrence policies who have "prompt notice" provisions must demonstrate that they were prejudiced by insureds' failures to notice occurrences

promptly. *But see Kentucky State Univ. v. Darwin Nat'l Assurance Co.*, 677
S.W.3d 294 (Ky. 2023) (rejecting the notice-prejudice rule in certain claims-made-
and-reported liability policies). Furthermore, that Court ruled that the burden of
proving "some substantial prejudice" rests upon the insurance company:

> We view the question of prejudice in terms of whether it
> is reasonably probable that the insurance carrier suffered
> substantial prejudice from the delay in notice. If the
> evidence on this issue is in conflict, or if reasonable
> minds could differ as to what the evidence proves in this
> regard, the issue is one for the trier of fact. The issue is
> ripe for summary judgment only where the proof is
> conclusive, or there has been a failure of proof, on this
> subject.

*Id*. at 803.

## II.    The date of the notice

Waller's principal argument is that she was not required to give State
Auto notice of the loss until she was aware that her claim exceeded her deductible.
Waller's argument relies on one use of the phrase "covered occurrence" in the
*Jones* opinion, extrapolating from that phrase that "[a] covered occurrence means
an occurrence for which the insured can obtain benefits in excess of a deductible."
Appellant's Brf. at 14. *Jones*, however, provides no such support for this
interpretation.

The *Jones* Court used the phrase "covered occurrence" while it was
discussing one of the four "major features" of insurance law in Kentucky that made

-14-

it unreasonable to decline to require insurers to prove they were prejudiced by untimely notice. That Court noted that these standard, form insurance policies are contracts of adhesion that afford a customer no "realistic opportunity to bargain." 821 S.W.2d at 801. Ambiguous terms in a contract of adhesion must be construed liberally to resolve all doubts in favor of the insured. *Id*. The Court noted that "prompt notice" in this contract of adhesion had neither a clear meaning nor strong parameters. Accordingly,

> [a] strict forfeiture interpretation of the prompt notice requirement excludes from the equation both the reasons why the insured failed to give prompt notice, such as whether a layman would realize that there was a covered occurrence, and the question whether the insurance carrier suffered any substantial prejudice from the delay.

*Id*. at 802.

Waller's interpretation of "covered occurrence" as a loss that exceeds the deductible is not to be found in this citation to *Jones*. Such interpretation is potentially too broad, as insurance contracts vary by their terms. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy . . . ." KRS 304.14-360. Pursuant to contract law principles, "a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence" and enforce the contract strictly according to its terms in the absence of ambiguity in the written instrument. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (citing *Hoheimer v.*

-15-

*Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)).  Ambiguity exists "'if a reasonable person would find it susceptible to different or inconsistent interpretations.'"  *Wehr Constructors, Inc. v. Assurance Co. of America*, 384 S.W.3d 680, 687 (Ky. 2013) (quoting *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010)).  Any "[a]mbiguity is generally resolved in favor of the insured."  *Kentucky State University*, 677 S.W.3d at 301 (citing *Thomas v. State Farm Fire and Cas. Co.*, 626 S.W.3d 504, 507 (Ky. 2021)).  But "[w]hen 'the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written.'"  *Kentucky State Univ.*, 677 S.W.3d at 300 (quoting *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002)).

Here, Waller's insurance contract did not require notice of a loss only after that loss exceeded the deductible.  The relevant, notice provision reads as follows:

> B. Duties After Loss
>
> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:
>
> 1. Give prompt notice to us or our agent . . . .

-16-

The relevant deductible provision states: "subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I that exceeds the deductible amount shown in the Declarations."

Together, this insurance contract requires an insured to notice the insurer once there is a loss. Separately, the insurer has a duty to pay the total of all loss that exceeds the deductible. In other words, the deductible controls the amount to be paid by the insurer to the insured on a covered loss; the deductible does not control whether and when there is a loss. Thus, Waller's argument that she was not required to notice a loss until the loss exceeded the deductible must fail. *See Hartford Fin. Serv's Grp., Inc. v. Cleveland Pub. Library*, 168 F. App'x 26 (6th Cir. 2006) (rejecting argument that a "loss" has not occurred "until the damage to its property exceeded the amount it would have to pay as a deductible").[5]

Waller alternatively argues that if she was required to "notice" State Auto, she complied with the provision in 2018.[6] She notes that the 2019-e-mail from Reilmann, State Auto's adjuster on her 2019 claim stated, "I understand you called in a claim last year, and it did not get entered." This argument ostensibly

---

[5] *See* Sixth Circuit Rule 32.1(a) permitting citation of any unpublished opinion, in contravention of Federal Rules of Appellate Procedure 32.1(a).

[6] Much like the record evidence regarding the timing of the notice of loss, Waller's arguments on appeal are a moving target, sometimes claiming the notice occurred in 2018, sometimes in 2019, and sometimes in 2020.

separately defines "notice" and "claim." Interestingly, State Auto's brief uses "notice" and "claim" almost interchangeably.

As insurance contracts vary according to their terms, though, we must analyze the contract to determine whether "notice" and "claim" are synonymous. Here, the instant, insurance contract's "notice" provision does not require that a "claim" be made, but only mandates that the insured "[g]ive prompt notice to us or our agent" of a loss. Neither "notice" nor "claim" is a term in the definitions section of the insurance contract. The two terms are not wholly synonymous, either, as a notice is an action that may occur before a claim is initiated. *See, e.g.*, *Jones*, 821 S.W.2d at 800 ("The insurance carrier, Bituminous Casualty, first became aware of the occurrence through a letter sent to Partin by Jones' attorney, dated August 20, 1988, with a copy to Partin's insurance agent, Energy Insurance Agency, advising Jones intended to pursue a claim. This agency in turn reported the potential claim to Bituminous Casualty on August 24, 1988.").

It is noteworthy that State Auto, the drafter of the instant, insurance contract, used both "notice" and "claim" in different contexts throughout the contract. It even used "notice" at other times in this same, "prompt notice" section, *i.e.*, an insured has a duty to [n]otify the police in case of loss by theft," and "[n]otify the credit card or electronic fund transfer card or access device company

-18-

in case of loss . . . ." Neither of those uses equates "notify" to filing a claim with the insurance company.

The contract contains the term "claim," on the other hand, just a few paragraphs below the "notice" provision regarding an insured's duty to provide "[e]vidence or affidavit that supports a *claim* under **E. 6**. . . ." This use of "claim" indicates the insured has taken further steps beyond the notice provision. And, more on point, a later provision in the contract differentiates the two terms:

> **e.** You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **C.** Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

This provision explicitly differentiates "notices" and "claims," making them separate and distinct actions to be undertaken by the insured, who can "make claim," but only if first "notify[ing] us of your intent to do so[.]" Additionally, the two words differ in meaning as the requisite notice to be provided under this section has a time limitation, but the filing of the claim does not. Thus, it appears "notice" and "claim" are separate terms and actions, and the contract required the insured to *notify* State Auto or its agent of a loss *prior to* the formal initiation of a *claim. See also Ashland Hosp. Corp. v. Darwin Select Ins. Co.*, 664 S.W.3d 509, 515 (Ky. 2022) ("did not constitute notification of circumstances that might give

-19-

rise to a claim"); *Commercial Travelers Mut. Accident Ass'n v. Witte*, 406 S.W.2d 145 (Ky. 1966) ("'The purpose of a provision for notice and proof of loss is to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it.'") (quoting 29A Am. Jur. 490 (Insurance, s 1374), Couch on Insurance (2d), s 49.373 (Vol. 14, p. 15), and *O'Reilly v. Guardian Mut. Life Ins. Co.*, 60 N.Y. 169, 19 Am.Rp. 151 (1875)).  Moreover, to the extent, if any, that "notice" and "claim" are ambiguous in this insurance contract, we generally resolve any ambiguities in favor of the insured to provide coverage for the insured under a reasonable interpretation of the ambiguous clauses.  *See Ashland*, 664 S.W.3d at 516 (summarizing Kentucky's insurance contract interpretation jurisprudence).  *But see Keathley v. Grange Ins. Co. of Michigan*, 803 F. App'x 907, 911 (6th Cir. 2020) (unpublished) (while interpreting Michigan law, the majority held that an insured's phone call notice to an insurance agent with explicit instructions to avoid filing a claim was an insufficient action to constitute notice of a loss).  *Compare with Keathley*, 803 F. App'x at 913-15 (White, J., concurring in part and dissenting part) (concluding that the same type of notice as in *Keathley* did comply with the notice of a loss provision because the provision was ambiguous, and Michigan law required the ambiguity to be construed in favor of the insured).

This discussion of "notice" versus "claim" brings us to the question of the appropriateness of summary judgment on the notice issue here. As we have noted previously:

> while the meaning of words in an insurance contract is a question of law, whether the conduct of the policyholder meets the definition of those words is a question of fact for the jury. *Anderson v. National Sec. Fire and Cas. Co.*, 870 S.W.2d 432, 435 (Ky. App. 1993). Further, if there is evidence from which different inferences may be drawn, then the inference to be drawn is for the jury to determine. *Id.*

*Marshall v. Kentucky Farm Bureau Mut. Ins. Company*, 618 S.W.3d 499, 502 (Ky. App. 2020).

Here, the insurance contract required Waller to notice State Auto promptly of a loss. The parties provided conflicting evidence regarding the timing and manner by which Waller noticed State Auto of the loss, and a factfinder could determine notice occurred under any of three dates. First, a factfinder could determine that Waller provided notice of the loss to State Auto in 2018. The Reilmann e-mail shows that Waller may have notified State Auto of the 2018 incident in 2018. However, Waller, in her deposition, averred that she did not know if she called her agent and noticed the loss in 2018. She did recall that she did not make a claim at that time because she did not believe the damage exceeded her deductible. That evidence is supported by Heeke's affidavit, which states that Waller did not "report a claim" to her insurance agency for the 2018 loss.

-21-

Next, a factfinder could determine that Waller gave notice to State Auto in 2019 of the 2018 loss. The Reilmann e-mail also provides evidence of this 2019 notice.[7] The Heeke affidavit further supports that conclusion, as it states that Waller informed her insurance agent about the 2018 damage in 2019, but Waller "never requested Hyland to formally present any such claim to State Auto."

Finally, a factfinder could determine that Waller provided notice to State Auto in 2020 of the 2018 loss. Indeed, Waller's attorney's e-mail affirms that she definitively notified them of the 2018 incident as of June 22, 2020.

Accordingly, a material issue of fact remains regarding the date that notice occurred. *Phoenix American Adm'rs, LLC v. Lee*, 670 S.W.3d 832, 840 (Ky. 2023) ("Because a factual dispute existed as to when Lee first notified Phoenix that his Kia was totaled, the [Court of Appeals] held that summary judgment was improper. We agree."). Remand is necessary for a factfinder to determine the date that State Auto was noticed of the 2018 incident. *Id.* A factual finding on the timing of the notice is an essential pre-requisite to determining whether the notice was "prompt" pursuant to the contract's terms. *See, e.g.*, *Jones*, 821 S.W.2d at 800 (six and a half months' delay not prompt); *Falls City Plumbing Supply Co. v. Potomac Ins. Co.*, 193 Ky. 734, 237 S.W. 376, 378 (1922) ("[T]he

_____

[7] Interestingly, State Auto seemingly concedes that notice might have been given by at least this point in time, as it argues in its brief that it was under no obligation to investigate the loss in 2019 because no claim was made at that time. Appellee's Brf. at 4-5.

-22-

question whether the notice was given within a reasonable time is one for the jury."). Accordingly, we reverse and remand for factual findings on this issue.

We address the remaining issues to the extent that they may be relevant to the issues presented on remand.

## III.    Discovery rule -- insidious onset

Waller alternatively argues that her notice in June of 2020 was timely because the damages allegedly occurred by insidious onset. Waller's argument is based on her belief that the discovery rule should apply to the later-discovered, interior damage to her home. "The discovery rule allows for an action to accrue when the plaintiff discovers (or in the exercise of reasonable diligence should have discovered) the injury." *Bridgefield Cas. Ins. Co., Inc. v. Yamaha Motor Mfg. Corp. of America*, 385 S.W.3d 430, 433 (Ky. App. 2012) (citing *Fluke Corp. v. LeMaster*, 306 S.W.3d 55, 60 (Ky. 2010)). The discovery rule is not available in all circumstances; instead, it is "available only in cases where the fact of injury or offending instrumentality is not immediately evident or discoverable with the exercise of reasonable diligence[.]" *LeMaster*, 306 S.W.3d at 60. While we do not hold that the discovery rule applies in homeowner's liability, insurance contracts, we can dismiss this claim because, *arguendo*, the circumstances presented here would not sustain an invocation of the discovery rule.

In the instant case, a large tree fell on Waller's house in 2018. The facts viewed in a light most favorable to Waller show that the injury to her home could have been discovered immediately through the exercise of reasonable diligence, or, at worst, at least by 2019. Moreover, Waller was abundantly aware of the need to inspect her roof in 2018 based solely on the large tree limbs laying across her roof. The evidence even demonstrates that she may have noticed her insurance agent at the time, although she did not make a formal claim, providing evidence that Waller was, indeed, aware of the damage to her home.

And, in 2019, while addressing a different tree falling on her roof, State Auto affirmatively apprised Waller of the need to make a claim on the 2018 tree fall. Thus, State Auto provided evidence that the alleged damage from the 2018 tree fall was or should have been reasonably apparent by at least the time of the 2019 inspection. In fact, Waller's own roofer in 2020 looked at the photos from 2018 and 2019 and determined the cause must have been the 2018 incident. Her roofer, Colvin, swore an affidavit that states in relevant part:

> 5. I have seen a photograph dated 04/10/19 attached hereto as Exhibit B which I understand was taken by a State Auto adjuster when visiting the home of Terri Waller at that time. In my opinion, the places on the roof which are indicated on this photograph are the same places where I found damage to the roof when I inspected the home in 05/2020.
>
> . . . .

-24-

9. The photograph attached hereto as Exhibit C is a photograph of the top of the roof taken by State Auto on 04/10/19 which based on reasonable roofing probability shows damage caused when the tree fell on the roof on 06/28/18. State Auto indicates that this damage was not significant, but the damage is significant and caused leaks which contributed to the interior damage to the home.

Even if Waller did not realize the existence or extent of the interior damage until much later, this discovery does not alter Waller's knowledge both that the tree fell on her house in 2018 and that such an incident could result in damage to her house. She could have made her claim then, or at least by 2019. She did neither, instead waiting another year, which is almost two years after the incident, before making a claim with State Auto. Accordingly, without deciding whether the discovery rule should apply in cases such as these, *arguendo*, its application to the instant case affords Waller no quarter. The evidence shows that she should have discovered the "fact of injury or offending instrumentality" through the exercise of reasonable diligence initially in 2018, again in 2019, and, at the latest, May of 2020. *LeMaster*, *supra*. Thus, assuming Waller first provided actual notice on June 22, 2020, as her counsel claims, she would be afforded no relief under the discovery rule.

IV.   **Reconsideration of previous motion for summary judgment**

Waller summarily argues that it was improper for State Auto to file its second motion for summary judgment in this case because State Auto was relying

on only one additional affidavit. Waller relies on *obiter dicta* from *Moore v. Commonwealth*, 357 S.W.3d 470, 496 (Ky. 2011), admonishing the bar to stop "badgering the court" with "multiple vexatious motions to reconsider" its previous interlocutory rulings prior to entry of a judgment. Here, State Auto engaged in additional discovery and filed a second motion for summary judgment, both of which are wholly appropriate pre-trial steps. State Auto was not "like the famed importunate widow of Holy Writ" attempting to "'wear out' the court by [its] continual coming[.]" *Burton v. Tartar*, 385 S.W.2d 168, 169 (Ky. 1964). The Circuit Court properly rejected this claim.

## V.    Estoppel

Waller also argues that State Auto should be estopped from asserting the notice-prejudice defense because State Auto was on notice of a loss by at least 2019 and elected not to investigate. As we are remanding for a factual finding on the date that Waller provided notice to State Auto,[8] resolution of the estoppel issue is premature.

---

[8] For example, Reilmann's e-mail does indicate that Waller noticed her agent in 2018 or 2019 of the 2018 loss. However, we do not know Reilmann's source for this information. Was he simply reiterating what Waller had informed him? Was his e-mail based on facts derived from State Auto or its agents? A genuine issue of material fact remains as to the manner and timing of any notice to State Auto of the loss. Depending on the future fact-finding of the notice date, Waller may have a viable, equitable estoppel claim if State Auto was on notice and chose not to investigate the claim.

## VI. Prejudice

Finally, we must briefly discuss whether State Auto has demonstrated that it was substantially prejudiced by any delay in notice per the notice-prejudice rule. Pursuant to the rule, once it is shown that a prompt notice provision has been breached, the burden is on the insurer to demonstrate that it was prejudiced by the breach. *Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 803 (Ky. 1991). The insurer must show "substantial prejudice from the delay in notice. If the evidence on this issue is in conflict, or if reasonable minds could differ as to what the evidence proves in this regard, the issue is one for the trier of fact." *Id.*

On remand, the question whether State Auto suffered prejudice may also constitute a fact issue, depending upon the date that the factfinder determines notice was given to State Auto of the loss. If the factfinder determines Waller promptly noticed State Auto, then there is no need for a prejudice inquiry because there was no delay. If, however, the factfinder decides that Waller did not promptly provide notice, State Auto may be able to demonstrate that it was substantially prejudiced if the damage, which sat unrepaired for one or two years, became more extensive than in 2018 or 2019. We note that Waller's own expert admitted in his affidavit that the damage in 2020 was worse than in 2019. Accordingly, on remand the question of prejudice may be a nullity, a fact issue, or an issue ripe for summary judgment.

## VII. Bad faith

The parties also disagree as to whether the Circuit Court properly granted summary judgment on Waller's bad faith claims. State Auto claims that no statutory or common law bad faith claim can be sustained because State Auto either had no contractual duty to pay or, alternatively, had a "fairly debatable" dispute over the factual or legal basis for the claim. As we are reversing and remanding for further proceedings as to the date on which notice was given, these defenses are not yet ripe for adjudication. Thus, we likewise reverse and remand for further proceedings on the bad faith claims.

## CONCLUSION

There exists a genuine issue of material fact regarding the timing of State Auto's notice of the 2018 loss. Whether that notice was prompt, and if not, whether State Auto was prejudiced by a failure to receive prompt notice, are questions that remain open until a factfinder determines the date State Auto was notified of the loss. Accordingly, we reverse and remand for further proceedings as set forth in this opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Eric M. Lamb                            Perry A. Adanick
Louisville, Kentucky                    Carmen C. Sarge
                                        Louisville, Kentucky